Filed 11/1/21 In re Gregory E. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re GREGORY E., Jr., a Person Coming Under the Juvenile Court Law. | B311071 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP00060A) |
| Plaintiff and Respondent, | |
| v. | |
| GREGORY E., Sr., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Marguerite D. Downing, Judge. Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

———————————

Gregory E., Sr. (Father) appeals from the juvenile court's jurisdictional finding and dispositional order regarding his son, Gregory E., Jr. (Gregory). Father contends the evidence is insufficient to support the juvenile court's finding that he failed to protect Gregory from Brenda B.'s (Mother's) substance abuse. Father also challenges the juvenile court's removal order and its finding the Indian Child Welfare Act (ICWA) does not apply. We affirm.

## FACTS

Mother and Father have one child, Gregory. He was born one month early by emergency C-section in December 2020. Gregory remained in the NICU for five days because he required oxygen and additional support. Father was present during the birth.

At the hospital, Gregory and Mother both tested positive for methamphetamine. A referral was made to the Los Angeles County Department of Children and Family Services (DCFS). When the DCFS social worker interviewed Mother at the hospital, Mother admitted to using methamphetamine a total of five or six times during the pregnancy to deal with pain associated with urinary tract infections. She last used methamphetamine a day or two before she gave birth. Mother began using methamphetamine at 14. At 17, she was diagnosed with bipolar disorder and depression. Mother reported she kept her drug use from father, maternal grandmother, and everyone else during her pregnancy.

Father has two older children with two other women: a 13 year old who does not live nearby and whom he hardly sees, and a one year old whom he sees through an informal arrangement with the child's mother. Maternal grandmother and others

1

reported Mother takes care of the one year old for Father because the child's mother has substance abuse problems. Father denied knowing Mother used any drugs while she was pregnant, though he was aware of her history of drug use.

Father lives with the paternal grandmother. He was unemployed at the time of Gregory's birth but had worked as a security guard. He told DCFS he was unable to financially care for Gregory himself but believed the maternal grandmother would be the best person to care for him because the paternal grandmother was significantly older. Father denied he abused drugs or alcohol. He admitted he had a prior criminal history of driving without the owner's consent. DCFS's investigation revealed Father had a long history of drug-related arrests, however.

One week after his birth, Father and Mother brought Gregory home to maternal grandmother's house. The children's social worker was present and asked Father about his arrests for use and possession of illegal substances. Father admitted he used methamphetamine three to four years ago but denied he used with Mother or knew she was using during the pregnancy. Father agreed to do an on demand drug test but did not show up for the test.

On January 7, 2021, DCFS filed a petition alleging Gregory was a child described under Welfare and Institutions Code section 300, subdivision (b)(1)[1] due to Mother's substance abuse and Father's failure to protect Gregory from Mother's substance abuse. At the January 12, 2021 detention hearing, the juvenile

---

[1]     All undesignated statutory references are to the Welfare and Institutions Code.

court found a prima facie case had been made that Gregory was a child described by section 300. The juvenile court further found it would not be detrimental to his safety to release him to Mother and Father.

Father did not appear at the detention hearing and denied knowing about it. However, he committed to participating in all future hearings regarding Gregory. At an arraignment hearing, the juvenile court found Father to be Gregory's presumed father and ordered "DCFS to provide father with referrals for services including random drug testing."

At the end of January, Mother became concerned about Gregory's umbilical hernia because it was very close to his pelvic region and had grown in size. On February 4, 2021, she brought him to the emergency room and was told he would need surgery to repair it.

On February 9, 2021, Mother tested positive for amphetamine and methamphetamine. Mother reported she was "overwhelmed about everything" and asserted she relapsed only once since giving birth. That weekend, she stayed with a friend. A removal order was issued for Gregory on February 18, 2021. The next day, Mother and Father brought him to the DCFS office together and he was taken into protective custody.

Throughout the proceedings, DCFS only had sporadic contact with Father. Social workers left him numerous voice or text messages that were not returned and unsuccessfully attempted to visit Father at his home several times. Even when DCFS was able to reach Father, he missed scheduled appointments to discuss the allegations in the petition. The record shows DCFS social workers briefly spoke to him four times from the time of Gregory's birth to the adjudication hearing: on

December 16, 2020, January 28, 2021, February 1, 2021, and February 19, 2021. Although he agreed to test, Father failed to show for drug tests on December 16, 2020 and February 8, 2021. Mother also reported not having any contact with Father from December 24, 2020 to February 2021. She reported he was upset to learn she used methamphetamine during the pregnancy, moved back to live with his mother, and changed his phone number. She and Father started speaking again in February 2021, and she planned to have Father move in with her while she got treatment for substance use.

Both Mother and Father appeared at the March 2, 2021 adjudication and disposition hearing. Mother submitted on the evidence. Father requested the trial court dismiss him from the allegations because there was insufficient evidence he knew or should have known about Mother's drug use. Father further argued there were no allegations or evidence that he had a current substance abuse problem and the burden should not be placed on him to prove he was not using.

The court sustained the petition as alleged and removed Gregory from the parents' custody under section 361. The court ordered DCFS to provide reunification services to both Mother and Father.

As to Father, the court found: "Given his substance abuse history, his relationship with the mother, he should have reasonably known when she was using. [¶] And since he has not made himself available to the Department, and has been more than evasive, the court's concern is he is also using, since he has not test[ed]. [¶] So given the child's young age and the positive tox, the court finds that return to [Father] would be detrimental to Gregory." Father was ordered to provide 10 random drug tests

and if any were missed or positive, he was to complete a full drug treatment program and participate in individual counseling. He was also ordered to participate in parenting courses. The court further ordered monitored visits for Mother and Father.

Father timely appealed.

## DISCUSSION

I. **The Jurisdictional Findings Are Supported By Substantial Evidence**

A. **Legal Principles**

Under section 300, subdivision (b)(1), the dependency court may exercise jurisdiction over a child when the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of the failure of his or her parent to "adequately supervise or protect the child." "[T]he question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, italics omitted.) "[P]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue. (*Ibid.*)

" 'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings . . . of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633.) In other words, an appellate court will look only at the evidence supporting a finding, and disregard the evidence supporting a contrary finding. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1526,

disapproved on a different ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

### B. Analysis

Father contends the failure to protect allegation against him should be dismissed because there was insufficient evidence that he knew or reasonably should have known Mother abused drugs during her pregnancy. Father focuses on Mother's admission that she hid her substance abuse from everyone during the pregnancy. Notwithstanding what he knew or should have known during the pregnancy, substantial evidence supports a finding Father failed to protect Gregory even after he was told about Mother's drug use.

The record shows Father knew Mother had a history of substance abuse. He also knew she had relapsed; DCFS advised him shortly after Gregory was born that Mother had used methamphetamines during the pregnancy. Father knew Mother received an emergency C-section. He also knew Gregory was born one month premature and stayed in the NICU because he required oxygen and additional support. Yet, Mother reported she had no contact with Father from December 24, 2020, to February 2021. Father admitted he had not called Mother or tried to visit the baby due to an increase in hours at work. Neither did Father contact DCFS to be apprised of Gregory's health and welfare during this time, despite numerous attempts by social workers to call, text, or visit him.

In short, Father failed to contact Mother or DCFS about his son for two months even though he knew Mother had relapsed, was recovering from an emergency C-section, and had a premature newborn with health issues. This is substantial evidence that Father failed to protect Gregory from Mother's

6

substance abuse.  (See *In re Rocco M., supra,* 1 Cal.App.4th at p. 824 [children of "tender years" face "an inherent risk to their physical health and safety" if they are not adequately cared for or supervised].)

Father contends he did not abandon Gregory but relied on the court and DCFS to ensure Mother properly cared for Gregory. Father argues it was reasonable for him to believe that the court's detention order releasing Gregory to the parents without any requirement that Father supervise Mother meant that Gregory would be safe with Mother alone.  We are not persuaded.

Father was not aware of the detention hearing or the court's order until January 28, 2021, when a DCFS adoption assistant made telephone contact with Father.  Prior to that, Father was alerted to the potential harm to Gregory from the fact of Mother's relapse and DCFS's involvement.  Yet, Father did nothing to maintain contact with Mother or DCFS about his newborn son.  Indeed, Father has failed to point to any affirmative effort by him to be a presence in Gregory's life from December 24, 2020 to February 2021, much less protect Gregory from Mother's substance abuse.

Father does not dispute he failed to cooperate with DCFS and demonstrated little interest in caring for his son between December 2020 to February 2021.  He instead contends this evidence meant DCFS improperly placed the burden on him to demonstrate he could properly and safely care for Gregory. Not so.  His lack of cooperation and disinterest in caring for his son was evidence of a failure to protect and he failed to rebut that evidence.  The burden of proof remained with DCFS and it met its burden.

7

## II. Father Forfeited His Challenge to the Removal Order

Father also contests the juvenile court's dispositional order removing Gregory from his custody.[2] Father contends the finding of detriment and the removal order were improperly based on Father's failure to comply with invalid orders to drug test. According to Father, the juvenile court acted in excess of its jurisdiction to order Father to drug test prior to taking jurisdiction over Gregory. As a result, the juvenile court could not remove Gregory based on Father's failure to comply with an invalid order. Father has forfeited this challenge to the dispositional order.

At the adjudication and disposition hearing, Father asked the court to dismiss the only allegation against him—that he failed to protect Gregory from Mother's substance abuse. He made no request or objection regarding disposition except to say: "As far as disposition, if the court is inclined to sustain the petition, [Father] would request a narrowly tailored case plan. [¶] That if the court were inclined to order testing, [Father] would [request it] set a certain amount of tests to demonstrate Father's sobriety." When the juvenile court ordered Gregory removed from both parents, Father did not object or make any further comment. Accordingly, Father has forfeited the right to challenge the removal order for failure to object below. (*In re Anthony P.* (1995) 39 Cal.App.4th 635, 641; *In re Richard K.*

---

[2] We note Father only challenges the removal order and no other part of the juvenile court's dispositional order, including that he either have 10 negative drug tests or participate in drug treatment and counseling.

8

(1994) 25 Cal.App.4th 580, 589–590.)  "[C]ourts have taken the position that if the law does not require the juvenile court to act in a certain way, the parent bears the responsibility to care for his or her own interests by asking the court to exercise its discretion in a manner favorable to the parent.  In such circumstances, the courts have not permitted the silent parent to argue that the juvenile court erred in not being psychic." (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339.)

Father does not dispute he failed to object to the removal order.  He instead contends the issue is reviewed de novo and not subject to forfeiture or waiver, relying on *In re M.W.* (2018) 26 Cal.App.5th 921, 929.  *In re M.W.* is inapposite.  It merely holds a review of legal issues is conducted de novo.  (*Id.* at p. 929.)  It does not mention forfeiture or waiver.  Father has failed to provide any authority that would allow him to challenge the removal order now.

## III.   A Proper ICWA Inquiry Was Conducted

Lastly, Father contends the court and DCFS failed to conduct a proper ICWA inquiry because they used the wrong ICWA-020 form.  Father asserts there is a newer version of the ICWA-020 form than the one, revised on March 25, 2020, that was completed by both parents.  Father has failed to show a newer version of the ICWA-020 form exists and we have not found one.  In any case, the record shows Father consistently reported to DCFS and the juvenile court he had no Indian ancestry.  On appeal, Father does not claim he or Gregory have Indian ancestry.  Thus, any error is harmless.  Reversal is not required.

### A. Applicable Law

Federal law requires that "[w]hen a court 'knows or has reason to know that an Indian child is involved' in a juvenile dependency proceeding, a duty arises under ICWA to give the Indian child's tribe notice of the pending proceedings and its right to intervene." (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1538, quoting 25 U.S.C. § 1912(a).) To effectuate this requirement, California law places on the juvenile court and DCFS an affirmative and continuing duty to inquire whether a child is or may be an Indian child. (§ 224.2, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 10; *In re Michael V.* (2016) 3 Cal.App.5th 225, 233.) As part of that duty, rule 5.481(a) of the California Rules of Court (Rule 5.481(a)) requires the juvenile court to order the parent to provide information about the child's Indian status by completing an ICWA-020 form. (Rule 5.481(a)(2)(C).)

If there is reason to believe an Indian child is involved in the proceeding, DCFS must make further inquiry regarding the possible Indian status of the child. (§ 224.2, subd. (e).) This includes, among other things, gathering information from relevant family members and contacting tribes that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. (§ 224, subd. (e)(1)–(2).) If the court concludes adequate inquiry and due diligence were made and there is no reason to know the child is an Indian child, it may make a finding that ICWA does not apply. (§ 224.2, subd. (i)(2).)

" 'The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.]' [Citation.] When . . . the facts are undisputed, we review independently whether the requirements

of ICWA have been satisfied.  [Citation.]  However, we review the juvenile court's ICWA findings under the substantial evidence test . . . ."  (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.)  "A notice violation under ICWA is subject to harmless error analysis.  [Citation.]  'An appellant seeking reversal for lack of proper ICWA notice must show a reasonable probability that he or she would have obtained a more favorable result in the absence of the error.' "  (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 715.)

### B.  Proceedings Below

In the detention report, DCFS indicated "the parents report no Indian Ancestry" and attached the ICWA-010(A) form.  The ICWA-010(A) form is a declaration made under penalty of perjury by the children's social worker, attesting to her inquiry into Gregory's Indian status on December 14, 2020.  Mother and Father gave her "no reason to believe the child is or may be an Indian child."

The record shows Father completed an ICWA-020 form dated February 1, 2021, by checking the box "[n]one of the above apply," indicating "[n]o known ICWA[.]"  The ICWA-020 form in the record shows a revision date of March 25, 2020.[3]  At Father's initial appearance on February 2, 2021, the juvenile court stated Father completed the ICWA-020 form indicating he had no Indian ancestry.  Because Mother had also indicated she had no Indian ancestry, the court found it had no reason to know that ICWA applied or that Gregory was an Indian child.  Father, who

---

[3]     Although the form in the record is not signed, it is completed as indicated above.  Father does not dispute this is the form that he or his attorney completed.

11

was present electronically via Web-Ex, did not object to or otherwise dispute the court's finding. Neither did his attorney.

### C. Analysis

Father's ICWA challenge on appeal is limited to his assertion that the wrong ICWA-020 form was used. He contends "[t]he case should be remanded with instructions to effectuate proper inquiry by using the new version of the ICWA-020 form that inquires as to whether the parents may have any Indian ancestry, not just membership." We note Father does not contend the juvenile court and DCFS failed entirely to inquire into Gregory's Indian status. He also does not contend the ICWA-020 form that was used is invalid. He claims only that there exists a version that was revised after March 25, 2020, and that we must remand the matter so he may complete this newest version. He presents no evidence this version exists. He does not indicate when it was revised and where it may be found, much less submit a copy of it to this court. The existence of such a document would be subject to judicial notice. (Evid. Code, § 452, subd. (c) [permissive judicial notice for "[o]fficial acts of the . . . judicial departments" of any state]; *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 904, fn. 5 [taking judicial notice of Judicial Council forms].) Indeed, our own research shows the March 25, 2020 revision remains the operative ICWA-020 form on the California courts' website.[4]

---

[4] On the court's own motion, we take judicial notice of the March 25, 2020 revision of the ICWA-020 form found on the California Courts' website. (<https://www.courts.ca.gov/documents/icwa020.pdf> [as of Nov. 1, 2021].)]

Neither does Father make any affirmative assertion of Indian ancestry on appeal. "Where the record below fails to demonstrate and the parents have made no offer of proof or other affirmative assertion of Indian heritage on appeal, a miscarriage of justice has not been established and reversal is not required. [Citations.]" (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388; accord, *In re H.B.* (2008) 161 Cal.App.4th 115, 121; see also *In re N.E.* (2008) 160 Cal.App.4th 766, 769 [failure to ask father whether he had Indian ancestry was harmless where father "does not assert on appeal that he in fact has any Indian heritage"].)

## DISPOSITION

The challenged findings and orders are affirmed.




OHTA, J. *

We Concur:



GRIMES, Acting P. J.



WILEY, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13