Filed 1/28/22  In re Q.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Q.G., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E077532 |
| Plaintiff and Respondent, | (Super. Ct. No. INJ2100049) |
| v. | OPINION |
| K.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Susanne Cho, Judge.

Affirmed in part, conditionally remanded with directions in part.

Nicole Williams and Laura Furness, under appointments by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Anna M. Marchand, and Julie Koons Jarvi, Deputy County Counsels, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

K.S. (Mother) appeals the juvenile court's jurisdictional/dispositional orders as to her one-year-old child Q.-Z.G. (Q.)  Mother argues that the court and the Riverside County Department of Public Social Services (DPSS) failed to comply with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related state law.[1]  We conclude that further ICWA inquiry is required.  We therefore conditionally remand the matter for further proceedings to ensure ICWA compliance.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A.  *General Background*

The family came to the attention of DPSS in January 2021 after Q. was born premature at 33 weeks and Mother tested positive for THC following Q.'s birth.  Q. was very small, had trouble feeding and breathing on her own, and was deemed to be medically fragile by a nurse.  Despite Q.'s medical issues, Mother demanded to take the child from the hospital.  Mother also engaged in domestic violence with Father while visiting Q. at the hospital and was arrested for assault with a deadly weapon and corporal

---

[1]  D.G. (Father) is not a party to this appeal.

[2]  As the sole issue on appeal concerns ICWA compliance, we only briefly discuss the underlying circumstances of the dependency proceedings.

injury on a spouse.  Q. was taken into protective custody and placed in a medically fragile foster home.

On February 25, 2021, a petition was filed on behalf of the child pursuant to Welfare and Institutions Code[3] section 300, subdivision (b) (failure to protect), due to the parents history of using marijuana and engaging in domestic violence, Q.'s premature birth, Mother's attempt to remove Q. from the hospital, and Father's history with child protective services.  The petition was amended on March 2, 2021.

On March 3, 2021, the child was formally detained from both parents, and the parents were provided with pre-dispositional services.  Father was found to be the presumed father of Q.

The juvenile court exercised jurisdiction on May 4, 2021 pursuant to section 300, subdivision (b).  Q. was adjudged a dependent of the court and removed from Mother's custody.  Father retained physical custody of Q., and the child was placed with Father under a family maintenance plan on conditions that he obey the restraining order, engage in counseling, and follow the medical needs of the child.  Mother was provided with reunification services and supervised visitation.

On June 2, 2021, DPSS filed a supplemental petition pursuant to section 387 to remove Q. from Father's care after DPSS received a referral concerning a domestic

---

[3] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

3

violence incident between Mother and Father.  The section 387 petition was later amended.

On June 3, 2021, the child was formally detained from Father's custody.  On August 5, 2021, the juvenile court found true the allegations in the amended section 387 petition, removed Q. from Father's care, and provided Father with reunification services.

B.  *ICWA Background*

Mother and Father repeatedly denied having any Native American ancestry. Father also stated that he would get his DNA tested.  At a hearing on February 26, 2021, Father's counsel, however, informed the juvenile court that the paternal grandmother (PGM) was born on a reservation in Palm Springs and that Father was unaware what type of Indian ancestry, if any, he may have had.  The juvenile court instructed DPSS to follow up on the ICWA issues, noting it was concerned to hear that PGM was born on an Indian reservation and wanted to ensure there was proper compliance with the ICWA.

On that same day, February 26, Father filed a Parental Notification of Indian Status (ICWA-020 form) indicating that he was or may have been a member of or eligible for membership in a federally recognized, unknown tribe.  He checked the box on the form indicating that one or more of his parents, grandparents, or other lineal ancestors was a member of a federally recognized tribe.  Father also noted on the form that the PGM was born on an Indian reservation in Palm Springs.

On March 1, 2021, the social worker spoke with Father to obtain more information regarding his reported Native American ancestry.  He denied membership or affiliation

4

with any tribe, but stated his mother was born on the Agua Caliente Indian Reservation and recommended that the social worker speak to her for more information. He denied that there were other family members who would have any information about their possible heritage.

The social worker spoke with PGM who confirmed that she was born on the Agua Caliente Band of Cahuilla Indians Reservation and was delivered by a midwife. She stated that she did not identify as Native American and denied being a registered member of any tribe or receiving any tribal benefits. She explained that she grew up on the reservation, attended the tribal school, and considered everyone there to be part of her family but was not a member of the tribe.

The social worker thereafter contacted Agua Caliente and inquired about the possible Indian ancestry for Q., Father, and PGM. The social worker spoke with the tribe's legal secretary, L.B.-S., who stated that "[Father] and [G.H. (PGM)] were not enrolled members of the tribe and she could not determine eligibility for Q.[] since the mother or father are not members" of the tribe.

At the continued detention hearing on March 3, 2021, the juvenile court found that DPSS had conducted a sufficient inquiry regarding whether the child may have Indian ancestry and found ICWA did not apply to the proceedings.

On March 11, 2021, Mother informed the social worker that she may have Native American ancestry. However, she declined to provide additional information.

5

On March 16, 2021, Father reported to the social worker that he had one percent Native American ancestry after receiving his DNA results. However, he was not a member of a federally recognized tribe, did not live on a reservation, had not attended school on a reservation, and never received financial assistance from a tribe.

In its jurisdictional/dispositional report, DPSS recommended the juvenile court find ICWA did not apply.

On May 4, 2021, the juvenile court found ICWA did not apply and that Q. was not an Indian child.

On May 30, 2021, after the section 387 supplemental petition was filed, Mother and Father again denied having any Native American ancestry. In its ICWA inquiry attachment form (ICWA-010(A) form), the social worker checked the box indicating the inquiry "gave me no reason to believe the child is or may be an Indian child."

On June 3, 2021, at the detention hearing for the section 387 supplemental petition, the juvenile court found ICWA did not apply and that DPSS had conducted a sufficient inquiry.

On June 4, 2021, Father did not report having any Native American ancestry or tribal affiliation. On June 10, 2021, Mother did not report having any Native American ancestry or tribal affiliation. In its jurisdictional/dispositional report for the section 387 supplemental petition, the social worker recommended the juvenile court find ICWA did not apply.

On August 5, 2021, at the jurisdictional/dispositional hearing for the section 387 supplemental petition, the juvenile court found that Q. was not an Indian child. Mother timely appealed.

III.

DISCUSSION

Mother argues the matter must be remanded to allow DPSS to conduct a further inquiry into the child's Indian ancestry because DPSS did not adequately discharge its duty of further inquiry. Mother faults DPSS for not contacting the tribe's "designated agent for receipt of notices" under section 224.2. DPSS responds that it adequately discharged its duty of inquiry and any error in not contacting the tribe's agent was harmless.

A. *Standards of Review*

"When, as is the case here, the facts are undisputed, we review independently whether the requirements of ICWA have been satisfied. [Citation.] However, we review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.]" (*In re A.M.* (2020) 47 Cal.App.5th 303, 314; accord, *In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) "We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." (*In re A.M.*, *supra*, at p. 314; accord, *In re Austin J.*, *supra*, at p. 885.) The parent who is appealing "'has the burden to show that the evidence

was not sufficient to support the findings and orders.'" (*In re Austin J.*, *supra*, at p. 885.) Where, as here, the juvenile court finds ICWA does not apply to a child, "[t]he finding implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." (*Ibid.*)

B. *Legal Principles*

ICWA's purpose is to protect the interests of Indian children and promote the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912; *In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8 (*Isaiah W.*).) Under ICWA, an "Indian child" is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions of "'Indian child'"]; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 ["[a]n 'Indian child' is defined in the same manner [under California law] as under federal law"].)

By defining Indian children in this way, "ICWA focuses on [tribal] 'membership' rather than racial origins." (*In re B.R.* (2009) 176 Cal.App.4th 773, 783.) Indeed, regardless of a child's race or ancestry, "if the child is not a tribe member, and the mother and the biological father are not tribe members, the child simply is not an Indian child."

8

(*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520.) It is up to the tribe to decide whether a child is an Indian child under ICWA. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 15.)

The duties imposed by ICWA on the juvenile court and a county welfare agency can be separated into three phases: (1) a duty to inquire, (2) a duty of further inquiry, and (3) a duty to provide ICWA notice. (*In re D.F.* (2020) 55 Cal.App.5th 558, 565-567.) Although ICWA does not require any inquiry to determine whether a child is an Indian child, California law imposes duties on county welfare departments and courts to make prescribed initial inquiries in every dependency case. (§ 224.2, subds. (a)-(c); *Isaiah W.*, *supra*, 1 Cal.5th at p. 14; *In re H.B.* (2008) 161 Cal.App.4th 115, 120 [ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child.].)

The child welfare agency's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) The juvenile court must ask the participants in a dependency proceeding upon each party's first appearance "whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)), and "[o]rder the parent . . . to complete Parental Notification of Indian Status ([California Judicial Council] form ICWA-020)." (Cal. Rules of Court, rule 5.481(a)(2)(C), italics omitted.)

9

The juvenile court and the child welfare agency have "an affirmative and continuing duty to inquire" whether a child is, or may be, an Indian child. (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a); see *In re K.M.* (2009) 172 Cal.App.4th 115, 118-119.) If, after the petition is filed, the juvenile court knows or has reason to know that an Indian child is involved (25 U.S.C. § 1912(a)), notice of the pending proceeding and the right to intervene must be sent to the tribe or the BIA if the tribal affiliation is not known (see §§ 224.2, subds. (d), (f), 224.3, subds. (a)-(g); Cal. Rules of Court, rule 5.481(b); *In re Robert A.* (2007) 147 Cal.App.4th 982, 989).

Father's disclosure that PGM was born on the Agua Caliente Reservation and PGM's confirmation of this information gave DPSS and the juvenile court "reason to believe" Q. was an Indian child within the meaning of ICWA, triggering DPSS's duty of "further inquiry" under ICWA. (See *In re T.G.* (2020) 58 Cal.App.5th 275, 292; *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052; see also § 224.2, subd. (e)(1).) A previous finding ICWA did not apply to the proceedings does not relieve the child welfare agency of its duty, because the juvenile court and the agency, as noted above, "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child" within the meaning of ICWA. (§ 224.2, subd. (a); see *Isaiah W.*, *supra*, 1 Cal.5th at p. 9; Cal. Rules of Court, rule 5.481(a).)

Because the duty of "further inquiry" was triggered, DPSS was required to follow the provisions set forth in sections 224.2 and 224.3. "Further inquiry" includes

interviewing the parents, Indian custodian, and extended family members to gather available familial and tribal enrollment information. (§§ 224.2, subd. (e)(2)(A); 224.3, subd. (a)(5).) The child welfare agency "has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.)

While interviewing parents and extended family members, the child welfare agency is to gather the following information: "(A) The name, birth date, and birthplace of the Indian child, if known[;] [¶] (B) The name of the Indian tribe in which the child is a member, or may be eligible for membership, if known[; and] [¶] (C) All names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5); see § 224.2, subd. (e)(2)(A).)

"Further inquiry" also includes contacting the Bureau of Indian Affairs and State Department of Social Services for assistance with identifying tribes in which the child may be a member of or eligible for membership. (§ 224.2, subd. (e)(2)(B).) Finally, "further inquiry" also includes contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe. (§ 224.2, subd. (e)(2)(C).) "Contact with a tribe" for the purpose of the child

11

welfare agency's duty of further inquiry "shall, at a minimum, include telephone, facsimile, or electronic mail contact to each *tribe's designated agent* for receipt of notices under [ICWA]" and "include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case."  (§ 224.2, subd. (e)(2)(C).)  Formal notice is required only when the further inquiry results in a reason to know the child is an Indian child.  (See § 224.2, subd. (d) [defining circumstances that establish a "reason to know" a child is an Indian child]; § 224.3 [ICWA notice is required if there is a "reason to know" a child is an Indian child as defined under § 224.2, subd. (d)]; *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052.)

Here, there is no dispute that the juvenile court and DPSS fulfilled its duty of initial inquiry and inquiry in contacting PGM.  The question, however, is whether DPSS fulfilled its duty of further inquiry in contacting the tribe's legal secretary, rather than the tribe's designated agent, and whether contacting the legal secretary was sufficient and/or harmless error.  Under the circumstances of this case and the plain meaning of the statute, we find DPSS's contact with Agua Caliente's legal secretary, as opposed to its designated agent, was insufficient and not harmless error.  The plain meaning of the statute specifically states "[c]ontact with a tribe" for the purpose of the department's duty of further inquiry "shall, at a minimum, include telephone, facsimile, or electronic mail contact to each *tribe's designated agent* for receipt of notices under [ICWA]."  (§ 224.2, subd. (e)(2)(C), italics added.)

12

While it is true DPSS is not required to "'cast about' for investigative leads" (*In re A.M.*, *supra*, 47 Cal.App.5th at p. 323), statutory law requires that an agency contact the tribe's designated agent when there is reason to believe such ancestry. (§ 224.2, subd. (e)(2)(C); *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1049 ["required further inquiry includes . . . contacting the Bureau of Indian Affairs and State Department of Social Services" (fn. omitted)].) The requirement that the agency contact the "tribe's designated agent for receipt of notices" is "for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility." (§ 224.2, subd. (e)(2)(B).) While "an 'Indian child' is defined in terms of tribal membership, not ancestry," "the question of membership is determined by the tribes, not the courts or child protective agencies. (See *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 65-66, fn. 21 [Indian tribe is final arbiter of its membership rights]; § 224.2, subd. (h) ['A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe . . . shall be conclusive. Information that the child is not enrolled, or is not eligible for enrollment in, the tribe is not determinative of the child's membership status unless the tribe also confirms in writing that enrollment is a prerequisite for membership under tribal law or custom'].)" (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 294.)

13

Finally, we cannot say any error was harmless as DPSS urges. DPSS asserts Mother cannot demonstrate prejudice because there was no duty to inquire with the tribal agent, Father repeatedly denied Native American ancestry, PGM reported that she did not identify as a Native American and that she was not a member of the tribe and received no tribal benefits, and the tribal secretary had sufficient information to determine whether Q. was an Indian child. However, we cannot say that the assistance provided by the tribal agent, which is required by statutory law, would not have pointed to more accurate tribal information. Further, the record does not contain any information as to what the tribal secretary knew about the paternal family or what information the social worker had provided to the tribal secretary. PGM's history of living on the Agua Caliente Indian reservation and attending school there is central to the question of whether she could be a member of the tribe. "Additional investigation may not develop further information establishing the need for ICWA notice, but it is essential to the enforcement of the court's and child protective agency's 'affirmative and continuing duty to inquire' to construe broadly the duty to make further inquiry." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 295.)

For these reasons, we conclude DPSS did not adequately discharge its duty of "further inquiry," and as such, the juvenile court's finding ICWA was inapplicable was not supported by sufficient evidence.

Limited remand is necessary for DPSS to adequately discharge its duty of further inquiry under sections 224.2 and 224.3 including, but not limited to, properly investigating the child's possible status as an Indian child by locating and interviewing

14

other paternal family members to gather all available required information, and contacting Agua Caliente's tribal agent to share whatever information deemed necessary by the tribes to make a determination of the child's potential status as an Indian child.

IV.

DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry provisions set forth in sections 224.2 and 224.3. If, after the court finds adequate inquiry has been made consistent with the reasoning in this opinion, the court finds ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court finds ICWA does not apply, the finding that ICWA does not apply to the case shall be reinstated. In all other respects, the juvenile court's findings and orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.

15