[No. B200606. Second Dist., Div. Seven. Feb. 25, 2008.]

In re H.B., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
GAIL B., Defendant and Appellant.

## COUNSEL

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Judith A. Luby, Principal Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**PERLUSS, P. J.**—Gail B., the mother of four-year-old H.B., appeals from the juvenile court's order terminating her parental rights under Welfare and Institutions Code section 366.26. Without ever affirmatively stating either she or H.B. may have American Indian ancestry, Gail B. contends the juvenile court's failure to inquire about such ancestry violated the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA)) and requires reversal of the termination order. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The jurisdiction/disposition report prepared by the Los Angeles County Department of Children and Family Services (Department) for H.B.'s June 29, 2005 hearing provides a compelling overview of Gail B.'s experience with the dependency court: "This is truly a sad case. The history of Gail B[.]'s life is well known to the Juvenile Dependency Court—first as a 9-year

dependent herself and now, for the last seven years, as the mother of children [D.B, D.B., B.B. and T.B.] who are currently dependents of the Court. Now, her fifth child H.B. has been detained by DCFS after mother failed a Voluntary Family Maintenance Plan that had been extended to ten months and included the additional supportive services of Family Preservation. Mother's recent drug screens that are positive for marijuana give conclusive proof that she continues to use drugs—although she will go to her grave denying it."

The record reveals extensive departmental intervention on behalf of Gail B.'s children, beginning in July 1998. At that time the Department filed a petition (sustained as amended) alleging Gail B.'s sons, D.B. and D.B., had been placed in dangerous situations both by their father, who drove under the influence of alcohol with them in the car and sexually abused their seven half siblings, and by their mother, whose drug use interfered with her ability to care for the boys. In April 1999 the Department filed a petition alleging Gail B. had neglected her third child, a girl (B.B.), and reciting the previously sustained allegations with respect to the two boys. The Department filed yet another petition in November 2000, one week after Gail B.'s fourth child, a girl (T.B.), was born. The four children were temporarily returned to their parents but removed again in March 2002 pursuant to a petition again alleging neglect by Gail B. After the 2002 petition was dismissed as to the two boys but sustained as to the two girls, all four children were released to their father. The children were again detained in July 2003 after the father tested positive for PCP. The new petition, which was sustained as to all four children, alleged ongoing drug use, endangerment and domestic violence by the father. The children were first placed with their adult half siblings and then transferred to foster homes.

In July 2004 the Department received a referral alleging emotional abuse and general neglect of then one-year-old H.B. by his mother.[1] Rather than detain H.B., the Department initiated a voluntary family maintenance contract with Gail B., which included parenting education, drug counseling and testing and general counseling. The contract was extended to provide family preservation services to the mother, but those services were terminated in March 2005 for noncompliance. After Gail B. tested positive for marijuana on three occasions in early 2005, the Department detained H.B. from his mother and filed a petition on May 26, 2005, which was consolidated with the pending

---

[1] Gail B. identified H.B.'s father as Henry K. Although the Department discovered an address for him, he never responded to the Department's attempts to contact him concerning the proceedings involving H.B.

petitions related to his siblings. Nothing in the record available to us suggests any of H.B.'s siblings was ever identified as possibly having American Indian ancestry.

The petition initiating proceedings as to H.B. did not indicate whether he had been identified as possibly having American Indian ancestry, but the detention report filed concurrently with the petition stated ICWA did not apply.[2] Gail B. did not appear at the detention hearing, and the court informed her attorney, "Next time, I'll want to make the inquiry of the ICWA and the paternity." The jurisdiction/disposition report filed by the Department for the June 29, 2005 hearing again noted ICWA did not apply and reported, "On 6/22/2005, mother stated that she does not have any American Indian heritage."

Gail B. personally appeared at the June 29, 2005 hearing, and both she and H.B. were represented by counsel. Although it had previously announced its intention to do so, the court did not inquire further about H.B.'s possible American Indian ancestry.

At the jurisdiction/disposition hearing the court sustained the petition, as amended; found by clear and convincing evidence H.B. was in danger unless removed from Gail B.'s custody; and, based on Gail B.'s failure to complete previously ordered services, accepted the Department recommendation that neither of H.B.'s parents be granted reunification services. Subsequent departmental reports continued to state ICWA did not apply, but the court never made an equivalent finding at any of the multiple hearings that occurred before termination of Gail B.'s parental rights. To this day, Gail B. has not claimed she or her children may have American Indian ancestry.

## DISCUSSION

### 1. *Standard of Review*

We review factual findings in the light most favorable to the juvenile court's order. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430 [49 Cal.Rptr.3d 951] (*Rebecca R.*).) Indeed, "[w]e must indulge in all legitimate

---

[2] The report also stated "Mother is developmentally delayed and receives SSI . . . [but] does not qualify for Regional Center Services as she does not meet the criteria." Gail B. asserts her developmental delay somehow compromised the Department's conclusion she had no American Indian ancestry, but we fail to see anything in the record to support this conclusion. Even were her impairment responsible for her failure to assert possible American Indian ancestry in the dependency court, she (and her counsel) could have easily remedied this defect on appeal.

and reasonable inferences to uphold the [judgment]. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217].) Our deference to the fact finder, of course, is not without limit. The substantial evidence standard requires evidence that is " ' " 'reasonable in nature, credible, and of solid value.' " ' " (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 705 [71 Cal.Rptr.2d 780].) A judgment is not supported by substantial evidence if it is based solely upon unreasonable inferences, speculation or conjecture. (See *People v. Anderson* (1968) 70 Cal.2d 15, 23–24 [73 Cal.Rptr. 550, 447 P.2d 942].)

### 2. *The Juvenile Court Erred in Failing to Ensure Compliance with State-imposed ICWA Inquiry Requirements*

■ The purpose of ICWA is to " 'protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' " (*In re Karla C.* (2003) 113 Cal.App.4th 166, 173–174 [6 Cal.Rptr.3d 205], quoting 25 U.S.C. § 1902; see also *In re Suzanna L.* (2002) 104 Cal.App.4th 223, 229 [127 Cal.Rptr.2d 860]; *In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1299 [112 Cal.Rptr.2d 692].) "ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469 [99 Cal.Rptr.2d 688].) For purposes of ICWA, an "Indian child" is a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4).)

■ When a court "knows or has reason to know that an Indian child is involved" in a juvenile dependency proceeding, the court must give the child's tribe notice of the pending proceedings and its right to intervene. (25 U.S.C. § 1912(a); see *In re S.B.* (2005) 130 Cal.App.4th 1148, 1157 [30 Cal.Rptr.3d 726].) ICWA itself does not expressly impose any duty to inquire as to American Indian ancestry; nor do the controlling federal regulations. (See 25 C.F.R. § 23.11(a) (1994).)[3] But ICWA provides that states may provide "a higher standard of protection to the rights of the parent . . . of an Indian child than the rights provided under [ICWA]" (25 U.S.C. § 1921), and

---

[3] Although ICWA notice provisions apply if the court "knows or has reason to know that an Indian child is involved," neither ICWA itself nor the federal regulations define "reason to know." (See *In re S.B., supra*, 130 Cal.App.4th at p. 1158.)

long-standing federal guidelines provide "the state court shall make inquiries to determine if the child involved is a member of an Indian tribe or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe."[4] (Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, 67588, part B.5.(a); see *In re S.B., supra*, 130 Cal.App.4th at p. 1158.)

■ At the time the Department commenced proceedings concerning H.B., California Rules of Court, former rule 1439(d),[5] imposed on both the juvenile court and the Department "an affirmative and continuing duty to inquire whether a [dependent] child . . . is or may be an Indian child." Former rule 1439(d)(2) provided "the social worker must ask . . . the parents . . . whether the child may be an Indian child or may have Indian ancestors." Former rule 1439(d)(3) provided, "[a]t the first appearance by a parent . . . in any dependency case, . . . the parent . . . must be ordered to complete form JV-130, *Parental Notification of Indian Status.*"

The requirement that the court order the parent to complete form JV-130 became effective on January 1, 2005. The initial dependency petition regarding H.B. was filed on May 26, 2005.[6] Nonetheless, there is no evidence in the record Gail B. was ever asked to complete form JV-130, and the juvenile court failed to make the required inquiry on the record. This was error.

### 3. *Any Error in Compliance with Applicable Inquiry Requirements Was Harmless*

■ A violation of ICWA notice requirements may be harmless error, particularly when, as here, the source of the duty to inquire is not ICWA itself but rather former rule 1439(d), a rule of court implementing ICWA. (*In re S.B., supra*, 130 Cal.App.4th at p. 1162; see *Nicole K. v. Superior Court* (2007) 146

---

[4] Nonetheless, the Guidelines for State Courts; Indian Child Custody Proceedings expressly provide they "are not intended to have binding legislative effect." (44 Fed.Reg. 67584 (Nov. 26, 1979).)

[5] Effective January 1, 2007, the California Rules of Court were renumbered and former rule 1439 is now rule 5.664. In this opinion, we refer to this rule as rule 1439, which was in effect during all hearings relevant to this appeal, and quote from the rule as it read at that time. All further rule references are to the California Rules of Court.

[6] As discussed, the detention report prepared for the May 26, 2005 hearing affirmatively stated "[t]he Indian Child Welfare Act does not apply," as did every Department report thereafter. Similarly, neither of the boxes on the petition (Judicial Council form JV-100) indicating tribal membership or eligibility for membership or Indian ancestry was checked.

Cal.App.4th 779, 784 [53 Cal.Rptr.3d 251].) "[A]ny failure to comply with a higher state standard, above and beyond what the ICWA itself requires, must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error." (*In re S.B.*, at p. 1162.)

In this case Gail B. has never asserted H.B. may have American Indian ancestry or suggested she would have said he did had she been required to complete form JV-130 or to answer on the record the juvenile court's inquiries on that subject. Absent any affirmative representation of Indian ancestry, either in the dependency court or on appeal, Gail B.'s statement to the social worker denying such ancestry and her failure to indicate any of her children may have Indian ancestry throughout the Department's lengthy involvement with this family fully support the conclusion any error by the juvenile court was harmless. (See *Rebecca R., supra*, 143 Cal.App.4th at p. 1431 ["There is nothing whatever which prevented [father], in his briefing or otherwise, from removing any doubt or speculation. He should have made an offer of proof or other affirmative representation that, had he been asked, he would have been able to proffer some Indian connection sufficient to invoke the ICWA. He did not."].) "The knowledge of any Indian connection is a matter wholly within the appealing parent's knowledge and disclosure is a matter entirely within the parent's present control. The ICWA is not a 'get out of jail free' card dealt to parents of non-Indian children, allowing them to avoid a termination order by withholding secret knowledge, keeping an extra ace up their sleeves. Parents cannot spring the matter for the first time on appeal without at least showing their hands. Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way." (*Ibid.*; cf. *In re J.N.* (2006) 138 Cal.App.4th 450, 461 [41 Cal.Rptr.3d 494] [rejecting contention of harmless error when Department failed to indicate mother was ever asked about possible Indian heritage].)

## DISPOSITION

The order of the juvenile court terminating the parental rights of Gail. B. is affirmed.

Woods, J., and Wiley, J.,* concurred.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.