Filed 2/24/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re S.S., et al., Persons Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> E.S., <br><br> Defendant and Appellant. | B314043 <br><br> (Los Angeles County Super. Ct. No. 19CCJP07836) |

APPEAL from an order of the Superior Court of Los Angeles County, Debra Archuleta, Judge. Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

_____

E.S. (Mother) appeals from the juvenile court's order terminating her parental rights under Welfare and Institutions Code section 366.26.[1]  She contends that the Los Angeles County Department of Children and Family Services (DCFS) and the court failed to comply with their duties of inquiry under section 224.2 and related rules of court.  We agree with DCFS that any such failure was harmless and, on that basis, affirm the court's order.

### FACTUAL AND PROCEDURAL SUMMARY[2]

Shortly before midnight on December 3, 2019, a police officer observed Mother pushing a stroller with her four-month-old daughter, S.S., inside.  It was raining and the temperature was below 50 degrees.  The officer believed Mother was under the influence of a stimulant, "most likely methamphetamine."  The officer arrested Mother on suspicion of child endangerment and being under the influence of drugs.  S.S. was placed in protective custody and taken to a hospital for examination.

On December 4, 2019, Mother told a social worker that S.S.'s father was Manuel R., who has custody of three other children the two had together.  The social worker asked Mother if there were other relatives who could be contacted and assessed as a relative caregiver, and Mother answered, "[N]o."  Mother also "denied Native American ancestry for the family."

---

[1] Subsequent unspecified statutory references are to the Welfare and Institutions Code.

[2] Because the sole issue on appeal is whether DCFS has complied with its duty of inquiry under ICWA-related California law, we focus our summary of facts and procedural history on the facts relevant to that issue.

Manual R. denied being S.S.'s father and said he ended his relationship with Mother more than two years earlier. He said that Mother had previously told him that S.S.'s father was in jail or prison, but she never told him the father's name.

On December 6, 2019, DCFS filed a juvenile dependency petition under section 300, subdivision (b), alleging that Mother had been arrested and had no plan for S.S.'s ongoing care and supervision. The petition included a statement on Judicial Council form ICWA-010 (Jan. 1, 2008) that a social worker had "made" an "Indian child inquiry," and that S.S. "has no known Indian ancestry."

Mother did not appear at a detention hearing held on December 9, 2019. The court detained S.S. and placed her in DCFS custody. The court ordered monitored visitation for Mother if she contacted DCFS to request visits. The court deferred the "determination of ICWA status . . . for the parents['] appearance."

DCFS placed S.S. in foster care with someone who remained her caregiver throughout the proceedings and whom the court subsequently granted de facto parent status and identified as the prospective adoptive parent.

On December 16, 2019, a social worker spoke with Mother by telephone. The social worker asked Mother about potential relatives who may be considered for placement, and Mother replied that "she did not have any relatives to provide at this time" and "she does not wish for [S.S.] to be placed with [S.S.'s maternal grandmother]." She also "did not wish to provide the child's father's information."

In a jurisdiction/disposition report filed on January 9, 2020, DCFS reported that Mother's whereabouts were unknown and she had not made herself available for an interview. A search for S.S.'s father was "unsuccessful." The report further noted Mother's denial

3

of Native American ancestry and stated that the ICWA "does not apply."

On January 9, 2020, Mother was present in court for the first and only time in this case. She filed a parental notification of Indian status form (Judicial Council Forms, form ICWA-020) stating that she has "no Indian ancestry as far as I know."

Our record does not include a reporter's transcript of the January 9, 2020 hearing. In a minute order issued after the hearing, the court stated that it "does not have a reason to know that [S.S.] is an Indian child, as defined under ICWA, and does not order notice to any tribe of the [Bureau of Indian Affairs]. Parents are to keep [DCFS], their attorney and the court aware of any new information relating to possible ICWA status. ICWA-020, the parental notification of Indian status [form,] is signed and filed. The court does not have a reason to know that ICWA applies as to Mother." (Capitalization omitted.)

The court further found that S.S.'s father is unknown. S.S.'s father was never identified to DCFS or the court and his whereabouts remained unknown throughout the proceedings. DCFS's efforts to identify and locate him are detailed in a declaration of due diligence, which the court found to be complete.

DCFS filed an amended dependency petition on January 22, 2020, which added an allegation under section 300, subdivision (b) that Mother is a current and frequent abuser of illegal substances, which renders her incapable of providing regular care for S.S.

During the combined jurisdiction and disposition hearing on January 30, 2020, the court found the amended petition's allegations true, declared S.S. a dependent of the court, and removed her from Mother's custody. S.S. continued to be placed with her foster parent.

4

In April 2020, S.S.'s maternal grandmother contacted DCFS to ask about visits with her. She also stated that she was interested in adopting S.S. "[V]irtual visits" (due to the COVID-19 pandemic) between maternal grandmother and S.S. were scheduled for once per week. Maternal grandmother participated in three of the eight visits scheduled in May, June, and July 2020. In a report filed in January 2021, a social worker stated that maternal grandmother's visits "remain[ed] inconsistent."

At a hearing held on January 13, 2021, counsel for Mother asked that the court consider possible placement with maternal grandmother. The court did not respond to this request. At the conclusion of that hearing, the court terminated Mother's reunification services and set the matter for a hearing to be held pursuant to section 366.26.

In April 2021, the court granted S.S.'s counsel's request that DCFS assess the maternal grandmother for possible placement of S.S. with her. In connection with the assessment, the maternal grandmother told a social worker that Mother had been living with her before S.S.'s birth and thereafter until a few days before DCFS took the four-month-old S.S. into protective custody. The maternal grandmother said she would like S.S. placed in her home and was willing to provide permanency for the child. DCFS recommended that S.S. remain in her current placement with a prospective adoptive parent. On May 6, 2021, the court denied the maternal grandmother's request for placement.

In a report prepared for the section 366.26 hearing, DCFS noted the court's January 9, 2020 finding that the court did not have a reason to know that S.S. is an Indian child and "recommended that the court find that [ICWA] does not apply as to this case."

On July 14, 2021, the court held a hearing pursuant to section 366.26. Mother was not present. The court terminated Mother's parental rights to S.S., approved the permanent plan of adoption, and designated S.S.'s foster parent as her prospective adoptive parent.

Mother filed a timely notice of appeal.

## DISCUSSION

Mother contends that DCFS failed to satisfy its duty under California law to inquire whether S.S. is or may be an Indian child within the meaning of ICWA. DCFS argues that Mother has failed to demonstrate that any such failure was prejudicial and the court's order terminating parental rights should therefore be affirmed. We agree with DCFS.

"Under California law, the court and county child welfare department 'have an affirmative and continuing duty to inquire whether a child,' who is the subject of a juvenile dependency petition, 'is or may be an Indian child.' [Citations.] The child welfare department's initial duty of inquiry includes 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' (§ 224.2, subd. (b).)" (*In re Austin J.* (2020) 47 Cal.App.5th 870, 883 (*Austin J.*).)[3]

_____

[3] Federal regulations implementing ICWA require that state courts, "at the commencement of the proceeding," "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a) (2022).) State courts must also "instruct the parties

Here, Mother informed a social worker at their first meeting that Mother's family had no "Native American ancestry." At her first court appearance on January 9, 2020, Mother filed an ICWA-020 form stating that she has "no Indian ancestry as far as [she] know[s]." According to a minute order regarding that hearing, the court determined that it "does not have a reason to know that ICWA applies as to Mother." Our record does not include a reporter's transcript of the January 9, 2020 hearing and we therefore presume that the court received evidence sufficient to support that conclusion. (See Cal. Rules of Court, rule 8.120(b) ["[i]f an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of" a reporter's transcript, an agreed statement, or a settled statement]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["it is presumed that the unreported trial testimony would demonstrate the absence of error"].)

Mother contends that even if DCFS satisfied its duty of inquiry as to herself, social workers failed to also ask S.S.'s maternal grandmother—an "extended family member[ ]"— about Indian ancestry. (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(1); see 25 U.S.C. § 1903(2) [defining extended family member to include grandparents].) The maternal grandmother, Mother points out, initiated contact with DCFS in April 2020, visited with S.S., and had ongoing contact with social workers, and yet there is no record of any ICWA-related inquiry to her.

---

to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (*Ibid.*)

7

Even if DCFS failed to fulfill its duty of inquiry with respect to the maternal grandmother, Mother has failed to show that the failure is prejudicial.

Social workers have no duty under federal law to ask extended family members about possible tribal membership. (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) The error, if any, is an error of state law. (*Ibid.*; accord, *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*).) The usual test for prejudicial state law error is whether, " 'after an examination of the entire cause, including the evidence' " (*People v. Watson* (1956) 46 Cal.2d 818, 836), we are "of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Ibid.*; see *Benjamin M., supra,* 70 Cal.App.5th at p. 742 [*Watson* standard applies to agency's failure to comply with initial duty of inquiry under California's ICWA-related law].) Although an appellant ordinarily has the burden of establishing prejudice (*Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 614), a parent's ability to make this showing based upon the record in failure-to-inquire cases can be problematic "when the record is inadequate because of the social services agency's failure to document its inquiries." (*A.C., supra*, 65 Cal.App.5th at p. 1070.) Some courts have addressed this problem by requiring an appellant who asserts a breach of the duty of inquiry to, at a minimum, make an offer of proof or other affirmative assertion of Indian heritage on appeal. (*Id.* at p. 1069; *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388; *In re H.B.* (2008) 161 Cal.App.4th 115, 122; *In re N.E.* (2008) 160 Cal.App.4th 766, 769; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430–1431; but see *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 [a parent "does not need to assert he or she has Indian ancestry to show a child

protective agency's failure to make an appropriate inquiry under ICWA and related law is prejudicial"].)

In *Benjamin M.*, *supra*, 70 Cal.App.5th 735, our colleagues in the Fourth Appellate District recently rejected such a requirement. (*Id.* at p. 745.) The court considered various means of reviewing this issue and concluded "that in ICWA cases, a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.)

Applying *Benjamin M.*'s test here, we note that the maternal grandmother is the only person Mother identifies as a person social workers should have asked about S.S.'s Indian ancestry.[4] We thus need only consider whether DCFS's failure to inquire of maternal grandmother was prejudicial under the *Benjamin M.* standard. We conclude that it was not. It is significant for the purposes of this analysis that the maternal grandmother expressed her desire to adopt S.S. and, with the aid of S.S.'s counsel, maternal grandmother sought to have S.S. placed with her. Mother's counsel also requested that maternal grandmother be considered for placement. Under ICWA, when an Indian child is the subject of foster care or adoptive placement proceedings, "preference shall be given, in the absence of good cause to the contrary, to a placement with . . . [¶] . . . a member of the Indian child's extended family." (25 U.S.C. § 1915(a) & (b).) Thus, if S.S. is an Indian child, that fact would support the maternal grandmother's efforts to have

_____

[4] Mother does not contend that DCFS or the court failed to satisfy any duty of inquiry with respect to the paternal side of S.S.'s family.

S.S. placed with her.  The maternal grandmother, Mother's counsel, and S.S.'s counsel, each of whom requested that the court consider placing S.S. with the maternal grandmother, would therefore have a strong incentive to bring to the court's attention any facts that suggest that S.S. is an Indian child.  Their failure to do so implies that the maternal grandmother is unaware of such facts.  Requiring that social workers now inquire of her as to her knowledge of such facts, therefore, is not "likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra,* 70 Cal.App.5th at p. 744.)  The social worker's failure to make that inquiry is therefore harmless.

## DISPOSITION

The orders appealed from are affirmed.
<u>CERTIFIED FOR PUBLICATION</u>.


ROTHSCHILD, P. J.

We concur:




CHANEY, J.




BENDIX, J.

10