Filed 7/18/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re RYLEI S., a Person Coming Under the Juvenile Court Law. | B316877 |
| | (Los Angeles County Super. Ct. No. 21LJJP00113A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| NATASHA S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Davis, Juvenile Court Referee. Conditionally affirmed and remanded with directions.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

———————————

Rylei S. was declared a dependent child of the juvenile court on June 14, 2021 and removed from her parents, Natasha S. and Philip A., after the court sustained an amended petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm), (b)(1) (failure to protect) and (j) (abuse of sibling), due to Natasha's history of violent behavior and Natasha's and Philip's history of substance abuse. On appeal Natasha contends the Los Angeles County Department of Children and Family Services violated Welfare and Institutions Code section 224.2, subdivision (e), and California Rules of Court, rule 5.481(a)(4), adopted to implement the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA), by failing to make an adequate "further inquiry" after she advised the Department and the court she and Rylei may have Cherokee ancestry though the maternal grandfather.

The Department does not dispute it violated the requirements of section 224.2[1] and rule 5.481(a)(4).[2] And it concedes the error requires reversal under the governing harmless error standard we articulated in *In re Antonio R.* (2022) 76 Cal.App.5th 421 and *In re Y.W.* (2021) 70 Cal.App.5th 542. Nonetheless, the Department has not stipulated to a remand to allow it to comply with ICWA and related California law, as it

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     References to rules are to the California Rules of Court.

2

has done in numerous appeals pending in this division, thereby avoiding the "unnecessary delay" it asserts our decisions create. Instead, the Department contends this court's 14-year-old decision in *In re H.B.* (2008) 161 Cal.App.4th 115, which involved harmless error analysis prior to the Legislature's 2018 amendments to California law expanding a child protective agency's investigative obligations, cannot be reconciled with our more recent decisions considering harmless error under current law. Then, misapplying the rationale of *In re H.B.*, the Department argues its multiple violations of express statutory requirements should be deemed harmless because, although she advised the juvenile court she may have Cherokee ancestry through her maternal grandfather, Natasha provided no additional evidence on appeal demonstrating Rylei is, in fact, an Indian child within the meaning of ICWA. We once again reject this cramped view of our obligations as an appellate court to ensure the Department complies with the robust duty of inquiry mandated by the Legislature.

### FACTUAL AND PROCEDURAL BACKGROUND

The Department filed the section 300 petition on behalf of Rylei on February 25, 2021. The Indian Child Inquiry Attachment to the petition (Judicial Council form ICWA-010(A)) stated the social worker had questioned Natasha on February 2, 2021 and Natasha gave the social worker no reason to believe Rylei was or might be an Indian child. However, when Natasha, represented by counsel, made her first appearance in the proceedings on March 11, 2021, she filed the Parental Notification of Indian Status form (ICWA-020), checking the box stating, "I may have Indian ancestry," and adding (with a

3

declaration under penalty of perjury), "Cherokee—on MGF's side—MGM has more information."

At the March 11, 2021 arraignment hearing the court, referring to Natasha's ICWA form, stated, "Based on the form, the mother's indicating she may have Cherokee heritage on the maternal grandfather's side and the maternal grandmother is the one who has the information. So the Department is asked to inquire of the maternal grandmother about possible Indian heritage. If the notice requirements are triggered, the Department's to provide notice, appropriate notice."[3] Although not included in the reporter's transcript of the proceedings, the minute order for March 11, 2021 stated the order regarding notice was not conditioned on the results of the Department's inquiry: "DCFS is to notice the Indian tribes to determine if this case falls within [ICWA]." The minute order also stated the court ordered the Department to contact the Bureau of Indian Affairs and to include the notices and any responses in the report for the next court hearing.

In the jurisdiction/disposition report filed April 14, 2021 the Department stated ICWA "does or may apply." According to the report, on March 17, 2021 a dependency investigator interviewed

---

[3] At his first appearance on April 16, 2021, Philip filed an ICWA-020 form checking the box indicating none of the indicators of possible Indian ancestry applied to him. At Philip's arraignment the court, based on this form, found ICWA did not apply to him, but noted, "We still have outstanding inquiry with respect to the mother." As was the case at Natasha's arraignment, the court failed to advise Philip to inform the court if he subsequently received information that provided reason to know the child was an Indian child, as required by section 224.2, subdivision (c), and rule 5.481(a)(2)(B).

4

the maternal grandmother, with whom Rylei had been placed. The maternal grandmother said she had no knowledge of Indian ancestry "on her side of the family"; if there was, "it would be so far back it would be untraceable"; and she had no knowledge of what tribe the possible ancestry would be. The report also stated the maternal grandmother provided the investigator information for ICWA notices, which "were initiated" on April 9, 2021. However, the report did not detail the information provided (not even the maternal grandfather's name) and did not attach copies of the ICWA notices sent by the Department.

The jurisdiction/disposition report stated efforts to interview Natasha about possible Indian ancestry were unsuccessful. However, elsewhere the report summarizes the dependency investigator's interview with Natasha regarding the allegations in the section 300 petition. The report does not indicate the Department made any attempt to interview the maternal grandfather[4] or any other of Rylei's maternal relatives,

---

[4] Natasha's appellate counsel points out that the Department's reports identify the maternal grandmother and her husband with a different surname from Natasha's, suggesting the maternal grandmother remarried. Counsel also speculates the maternal grandfather referred to in Natasha's ICWA-020 form may have died, noting the detention report's summary of Natasha's prior history with the Department indicates a child residing with Natasha in March 2013 told a social worker he had missed school for two days "for MGF's funeral in Las Vegas." Whether that child is Rylei's half sibling or stepbrother is not specified, nor is it clear whether "MGF" is Natasha's father. Neither the Department's jurisdiction/disposition report nor any other filing with the juvenile court in the appellate record states whether the maternal grandfather is still alive or provides any other information about the maternal grandfather.

nor does it say whether the maternal grandfather had any siblings.

At the jurisdiction hearing on April 29, 2021, after the Department's counsel directed the court to the brief summary of the interview with Rylei's maternal grandmother in the jurisdiction/disposition report, the court stated, "The Department is not required to interview the maternal grandmother any further. I just need the results of the notices that were sent." The court did not address the adequacy of the Department's efforts to interview any of Rylei's other maternal relatives.

On May 25, 2021 the Department filed a last minute information report for the court, attaching an April 27, 2021 letter from the United States Department of the Interior stating the notice provided by the Department contained insufficient information to determine any tribal affiliation for Rylei. The letter also stated, "[W]hen additional information becomes available, please forward the Notice to the appropriate Tribe(s)." No copies of any notice to, or response from, the Cherokee Tribe were submitted.

At the June 14, 2021 disposition hearing, after stating "notices were sent out over 60 days ago,"—without seeing those notices or reviewing their adequacy—the court found it had no reason to believe ICWA applied to Natasha, Philip or Rylei. The court declared Rylei a dependent child of the court, removed her from parental custody and ordered her suitably placed under the supervision of the Department with that placement to remain with the maternal grandmother. The court ordered reunification services for Natasha, but denied services to Philip based on his failure to make reasonable efforts to treat the problems that led

to the removal and termination of Philip's parental rights as to a half sibling of Rylei.  (§ 361.5, subd. (b)(11), (13).)

Natasha filed a timely notice of appeal.

## DISCUSSION

1. *ICWA and the Duties of Inquiry and Notice*

ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq. (2022)) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes.  (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 551.)  The statute authorizes states to provide "'a higher standard of protection'" to Indian children, their families and their tribes than the rights provided under ICWA.  (*In re T.G.* (2020) 58 Cal.App.5th 275, 287-288; see 25 U.S.C. § 1921.)  In addition to significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.*, at pp. 287-288), ICWA permits an Indian child's tribe to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding (see 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8).

To ensure Indian tribes may exercise their rights in dependency proceedings as guaranteed by ICWA and related state law, investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided to the appropriate tribes.  (§ 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child"]; see *In re Charles W.* (2021) 66 Cal.App.5th 483, 489.)  The duty to inquire "begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the

7

child may be an Indian child." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290; accord, *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 429; see § 224.2, subds. (a)-(c).)

In addition, section 224.2, subdivision (e), imposes a duty of further inquiry regarding the possible Indian status of the child "[i]f the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine there is reason to know that the child is an Indian child." Rule 5.481(a)(4) provides that further inquiry must be conducted if the social worker "knows or has reason to know or believe that an Indian child is or may be involved." Further inquiry includes, "but is not limited to," interviewing, as soon as practicable, extended family members to gather the biographical information required by section 224.3, subdivision (a)(5), to be included in ICWA notices, contacting the Bureau of Indian Affairs and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2).)

If those inquiries result in reason to know the child is an Indian child,[5] notice to the relevant tribes is required. (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3; see *In re J.S.* (2021) 62 Cal.App.5th 678, 686; *In re T.G.*, *supra*, 58 Cal.App.5th at

---

[5] "For purposes of ICWA, an 'Indian child' is an unmarried individual under age 18 who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 287, fn. 10; see 25 U.S.C. § 1903(4) [definition of "'Indian child'"] & (8) [definition of "'Indian tribe'"]; see also Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

8

p. 290.)  The governing federal regulations require ICWA notices to include, if known, the names, birthdates, birthplaces and tribal enrollment information of all direct lineal ancestors of the child. (25 C.F.R. § 23.111(d)(3) (2022).)  State law mandates inclusion of "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known."  (§ 224.3, subd. (a)(5)(C); see *In re A.M.* (2020) 47 Cal.App.5th 303, 317 ["'If the notice duty is triggered under ICWA, the notice to a tribe must include a wide range of information about relatives, including grandparents and great-grandparents, to enable the tribe to properly identify the children's Indian ancestry.  [Citation.]  Any violation of this policy requires the appellate court to vacate the offending order and remand the matter for further proceedings consistent with ICWA requirements'"].)

"The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families." (*In re Antonio R., supra*, 76 Cal.App.5th at p. 430]; accord, *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 ["the agency has a duty to gather information by conducting an initial inquiry, where the other party—here the parent . . . has no similar obligation"]; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["[t]he court and the agency must act upon information received from any source, not just the parent [citations], and the parent's failure to object in the juvenile court to deficiencies in the

9

investigation or noticing does not preclude the parent from raising the issue for the first time on appeal"].)

2. *The Department Failed To Adequately Investigate Rylei's Possible Indian Ancestry*

Regardless of a parent's response concerning his or her possible Indian ancestry on the ICWA-020 Parental Notification of Indian Status form or when questioned by the court at the initial appearance, if, as here, a child has been detained and placed in the temporary custody of a child protective agency, section 224.2, subdivision (b), requires the agency to ask the child, the parents, extended family members[6] and others who have an interest in the child whether the child is, or may be, an Indian child. (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 429 ["'[t]he duty to inquire begins with initial contact [citation] and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child'"]; *In re S.R.* (2021) 64 Cal.App.5th 303, 314 [same].) Although a dependency investigator interviewed Rylei's maternal grandmother, nothing in the record, including the jurisdiction/disposition report prepared by the Department, which summarized its ICWA-inquiry efforts, indicates the Department met this obligation by contacting (or attempting to

---

[6] ICWA provides, "'[E]xtended family member' shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2).) Welfare and Institutions Code section 224.1, subdivision (c), provides "extended family member" is defined as provided in ICWA.

contact) any other member of Natasha's family who might have information concerning Natasha's understanding the maternal grandfather may have Cherokee ancestry. Indeed, even though Natasha was interviewed in April 2021 about the allegations of violence and substance abuse in the dependency petition, it appears no effort was made to inquire further about the basis for her report of possible Cherokee ancestry on the ICWA-020 form, let alone to reconcile that statement with the social worker's comment in the ICWA-010(A) form that Natasha had provided no information indicating Indian ancestry. As the Department's appellate counsel essentially concedes, the Department failed to satisfy its duty of inquiry under section 224.2, subdivision (b).

But this is not simply a case involving what is sometimes (and somewhat inaccurately) referred to as the Department's initial duty of inquiry. (Cf. *In re J.C.* (2022) 77 Cal.App.5th 70, 77 ["[a]lthough commonly referred to as the 'initial duty of inquiry,' it 'begins with the initial contact' [citation] and continues throughout the dependency proceedings"].) As the Department reported to the court on April 14, 2021, ICWA "does or may apply" to Rylei. Because it had reason to believe an Indian child may be involved,[7] the Department was obligated

---

[7] As amended effective September 18, 2020—five months prior to the initiation of these dependency proceedings—section 224.2, subdivision (e)(1), provides there is "reason to believe a child involved in a proceeding is an Indian child" (as opposed to "reason to know," as defined in section 224, subdivision (d)), whenever the court or the social worker "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." Rule 5.481(a)(4) clarifies further inquiry is required if a social worker or investigator has reason to believe an Indian child

11

under section 224.2, subdivision (e), and rule 5.481(a)(4), to "make further inquiry regarding the possible Indian status of the child" and to "make that inquiry as soon as practicable." (See *In re Josiah T.* (2021) 71 Cal.App.5th 388, 404 [paternal grandmother's statement she had Cherokee ancestry through her grandmother triggered the duty of further inquiry even though she declined to provide further information about the grandmother and denied having further information about the family's Indian ancestry]; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 292 [mother's ICWA-020 form declaring her belief she had Cherokee ancestry on her maternal side and also indicating possible Indian ancestry through her paternal grandfather without identifying a tribe "unquestionably provided reason to believe Indian children might be involved"]; *In re A.M.*, *supra*, 47 Cal.App.5th at p. 322 [mother's statement she had been told she may have Indian ancestry with Blackfeet and Cherokee tribes and identification of her grandfather as having possible Indian ancestry, while not requiring ICWA notice, were sufficient to require further inquiry under section 224.2, subdivision (e)]; see also *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 786-787.) As discussed, that duty of further inquiry required interviewing, "as soon as practicable," extended family members to develop specific biographical information, contacting the Bureau of Indian Affairs and "[c]ontacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)-(C).) That informal contact with the tribe must include "sharing information identified by the tribe as

may be involved. (See *In re T.G.*, *supra*, 58 Cal.App.5th at p. 291.)

12

necessary for the tribe to make a membership or eligibility determination." (§ 224.2, subd. (e)(2)(C); see *In re D.F.* (2020) 55 Cal.App.5th 558, 567.)

The Department completely failed to satisfy any of these duties. Not only was there no contact with any extended family members other than the maternal grandmother, but also there is no indication the Department attempted to have informal contact with the Cherokee Tribe as required by section 224.2, subdivision (e)(2)(C). (See *In re K.T.* (2022) 76 Cal.App.5th 732, 744 [child protective service agencies "do[] not discharge their duty of further inquiry until they make a 'meaningful effort' to locate and interview extended family members and to contact BIA and the tribes"].)

Responsibility for the errors and omissions here does not rest solely with the Department. The juvenile court also erred in failing to ensure the Department had satisfied its duties of inquiry before finding ICWA did not apply to the proceedings. (§ 224.2, subd. (i)(2) [court may make a finding that ICWA does not apply to the proceedings if the court makes a finding, supported by sufficient evidence, "that proper and adequate further inquiry and due diligence as required in this section have been conducted"]; see *In re J.C., supra,* 77 Cal.App.5th at p. 79 ["The juvenile court, too, did not satisfy its duty to ensure the Department adequately investigated whether J.C. may be an Indian child. There is no indication in the record that, after the detention hearing, the juvenile court gave ICWA another thought in the almost three years of this dependency case"]; *In re Antonio R., supra,* 76 Cal.App.5th at p. 431 ["[a]lthough section 224.2, subdivision (b), places on the Department the duty to inquire, including of extended family members, section 224.2,

subdivision (a), makes clear that the 'affirmative and continuing duty to inquire' whether a child is or may be an Indian child rests with both the Department *and the court*"]; see also *In re K.R.*, *supra*, 20 Cal.App.5th at p. 709 ["the court has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so"].)

### 3. *The Department's and Juvenile Court's Failures To Comply with Section 224.2 Were Not Harmless Error*

For obvious reasons, the Department does not suggest it complied with its duty of inquiry under section 224.2, subdivision (b), or its duty of further inquiry under section 224.2, subdivision (e), nor does it contend substantial evidence supported the juvenile court's finding that ICWA did not apply to the case. Yet it argues we should affirm the no-ICWA finding because, "without some offer of proof or affirmative representation indicating some Indian connection, any error is harmless."

As the Department recognizes, we have previously rejected this argument, holding an offer of proof is not required to demonstrate prejudice in the context of section 224.2, subdivision (b), error—that is, in situations where the parent stated she had no knowledge of Indian ancestry and the Department, notwithstanding its statutory obligation to do so, failed to question extended family members about the child's possible Indian status. (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 556 [A parent "does not need to assert he or she has Indian ancestry to show a child protective agency's failure to make an appropriate inquiry under ICWA and related law is prejudicial. . . . It is unreasonable to require a parent to make an

14

affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim"]; *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 435 ["in determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child"].)

But this appeal does not involve a mother who said she was not aware of any possible Indian ancestry. Here, the Department failed to conduct further inquiry as required by section 224.2, subdivision (e), after Natasha declared under penalty of perjury she may have Cherokee ancestry (and the Department reported to the court that ICWA "does or may apply")—precisely the "affirmative representation indicating some Indian connection" the Department contends is necessary to demonstrate its statutory violations were not harmless.

Apparently recognizing the futility of this argument, elsewhere in its brief the Department suggests not simply that some affirmative representation of the child's Indian status by a parent is required before we reverse a no-ICWA finding made without an adequate investigation, but that the parent should be required to come forward with information sufficient to establish the child is in fact an Indian child. The Department asserts, "Considering the purpose of the ICWA and the definition of 'Indian child,' it is unreasonable to conclude that a parent may not know they are a registered member of a Federally recognized

15

Indian tribe or that their family is an intact Indian family deserving of protection."[8]

The Department's assumption as to what a parent should know overlooks recent findings on the impact this country's decades-long efforts to destroy Indian families and eradicate Indian history and culture, including through abuses of the child welfare system, may have on a family's awareness of its Indian ancestry.[9] (See Executive Summary to Bureau of Indian Affairs ICWA Regulations, 81 Fed.Reg. 38778 (June 14, 2016) [separation of Indian children from their families and placement in non-Indian foster care and adoptive homes "contributed to a number of problems, including the erosion of a generation of Indians from Tribal communities, loss of Indian traditions and culture, and long-term emotional effects on Indian children caused by loss of their Indian identity"].) As explained in the California ICWA Compliance Task Force's 2017 Report to the

---

[8] Contrary to the Department's suggestion, ICWA's definition of an "Indian child" does not require the parent be a "registered member" of a federally recognized tribe. Indeed, "a person need not be a *registered* member of a tribe to be a member of a tribe." (*In re B.H.* (2015) 241 Cal.App.4th 603, 606-607.) Moreover, the issue of tribal membership—a question to be determined by tribes, not the courts or child protective agencies (§ 224.2, subd. (h))—is not nearly so simple as the Department suggests. (See, e.g., *In re B.H.*, at p. 607 ["it is possible for a child to be an Indian child on the basis of a grandparent's membership in a tribe"].)

[9] The Department's claim is also at odds with common experience. For many of us, particularly those descended from victims of historic trauma, our children's grandparents and great-grandparents have a far clearer understanding of our family's ancestry than do we.

California Attorney General's Bureau of Children's Justice, "When parents are the sole target of the initial inquiry, it should be understood that there are a variety of reasons why relying on the parents does not necessarily protect the child's best interests, or the rights of the tribe.  Parents may simply not have that information, or may possess only vague or ambiguous information.  [¶]  The parents or Indian custodian may be fearful to self-identify, and social workers are ill-equipped to overcome that by explaining the rights a parent or Indian custodian has under the law.  Parents may even wish to avoid the tribe's participation or assumption of jurisdiction." (*Id.* at p. 28, fns. omitted.)  For this reason, the Legislature in 2018 added new section 224.2, subdivision (b), to California's ICWA-related law, expressly mandating that, from the outset, child protective agencies not limit their investigation of a child's possible Indian status to the child's parents.  (Assem. Bill No. 3176 (Stats. 2018, ch. 833) § 5; see *In re T.G.*, *supra*, 58 Cal.App.5th at p. 295 ["the imposition of a duty to inquire that is significantly more expansive than the duty to provide ICWA notice is premised on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers like Los Angeles, may well have lost the ability to convey accurate information regarding their tribal status"].)[10]

---

[10]     Rejecting the harmless error analysis we have adopted in ICWA inquiry cases, our colleagues in Division Two in *In re Dezi C.* (2022) 79 Cal.App.5th 769 also ignore this real-world consequence of the historic mistreatment of our country's native population, declaiming, "We decline to adopt a rule that obligates us to view with a jaundiced eye whatever parents report about their heritage, at least in the usual case where the parents were not adopted and thus can be presumed to be knowledgeable." (*Id.*

17

In yet another challenge to our harmless error analysis in ICWA inquiry cases, the Department observes that in *In re Y.W.*, *supra*, 70 Cal.App.5th 542, "this Court failed to reconcile its contrary decision in *In re H.B.*, *supra*, 161 Cal.App.4th at p. 122." The Department is correct *In re H.B.* was not discussed in *In re Y.W.* Nor was it cited in the Department's brief, and no petition for rehearing was filed suggesting its omission justified reconsideration of our decision.

The absence of *In re H.B., supra*, 161 Cal.App.4th 115 from the Department's brief and then our opinion in *In re Y.W.* is understandable. Rather than citing *In re H.B.*, the Department relied on *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, in which the court of appeal found harmless the child protective agency's failure to document the results of a court-ordered ICWA-related inquiry, stating the father "should have made an offer of proof or other affirmative representation that, had he been asked, he would have been able to proffer some Indian connection"— language we cited in *In re H.B.*, at page 122. Our opinion in *In re Y.W.* addressed *In re Rebecca R.* at some length and explained why, given the Department's failure to comply with the expanded duties of inquiry imposed in 2018 by section 224.2, subdivision (b), no affirmative showing by a parent on appeal was necessary to justify a reversal and remand for a proper inquiry. (*In re Y.W.*, *supra*, 70 Cal.App.5th at pp. 555-556; accord, *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 743 ["[r]equiring a parent to prove that the missing information would have demonstrated 'reason to believe' would effectively impose a duty

---

at p. 784.) Yet that is precisely what the Legislature mandated when it added new section 224.2, subdivision (b), in 2018.

on that parent to search for evidence that the Legislature has imposed on only the agency"].)

It is that significant difference between the limited state law obligation to ask a parent about possible Indian ancestry that existed in 2005 and 2006 when the pertinent events took place in *In re H.B.*, *supra*, 161 Cal.App.4th 115,[11] and the far broader duties of inquiry the Department failed to satisfy in 2020 and 2021, that belies the Department's contention our decision in *In re H.B.* is somehow fatally inconsistent with our more recent decision (and may well explain why the Department omitted any reference to *In re H.B.* in its briefing in *In re Y.W.*). In its filing before the jurisdiction/disposition hearing on June 29, 2005 in *In re H.B.*, the Department reported the mother had been interviewed and said she had no American Indian ancestry. (*Id.* at p. 119.) At the jurisdiction hearing in that case, the mother's first appearance in the proceedings, the juvenile court did not ask the mother whether her child may be an Indian child or have Indian ancestry or order the mother to complete the Parental Notification of Indian Status form (then JV-130), as required by

---

[11] When we decided *In re H.B.*, the source of any duty to inquire about a child's Indian status was California, not federal, law. (See *In re H.B., supra,* 161 Cal.App.4th at p. 120 ["ICWA itself does not expressly impose any duty to inquire as to American Indian ancestry; nor do the controlling federal regulations"].) However, federal regulations governing ICWA adopted in December 2016 now require an ICWA inquiry be made at the inception of dependency proceedings, as well as at all proceedings that "may culminate" in foster care placement or termination of parental rights. (25 C.F.R. §§ 23.2(2), 23.107(a) (2022); see *In re Austin J.* (2020) 47 Cal.App.5th 870, 883.)

former rule 1439(d)(3) (now rule 5.481(a)(2)).[12]  We held, in light of the mother's statement to the social worker denying any Indian ancestry and the absence of any suggestion in the juvenile court or on appeal she would have given a different answer had she been required to complete form JV-130 or to respond on the record to the court's inquiry, the errors were harmless.  (*In re H.B.*, at p. 122.)  That is, the required inquiry had been made (the mother was asked by the social worker), and the response documented (she denied any Indian ancestry).  The error found harmless was the failure to confirm that answer in response to a question from the court and in a Judicial Council form.

Here and in *In re Y.W.*, *supra*, 70 Cal.App.5th 542, in contrast, the errors were the Department's nearly complete failure to make the additional inquiries of extended family members now required by section 224.2, subdivision (b) (and, in this case, the inquiries under section 224.2, subdivision (e), as well), not merely the failure to confirm an answer previously given.  As we observed in *In re Antonio R.*, *supra*, 76 Cal.App.5th at page 435, that missing information was, at the very least,

---

[12]  Former rule 1439(d) provided in part, "(2) In dependency cases, the social worker must ask the child, if the child is old enough, and the parents or legal guardians whether the child may be an Indian child or may have Indian ancestors.  [¶]  (3) At the first appearance by a parent or guardian in any dependency case, or in juvenile wardship proceedings in which the child is at risk of entering foster care or is in foster care, the parent or guardian must be ordered to complete form JV-130, *Parental Notification of Indian Status*."  The Legislature codified these requirements with its enactment of Senate Bill No. 678 (Stats. 2006, ch. 838, §§ 1-57), effective January 1, 2007, in former section 224.3.

likely to be meaningful in determining whether the children involved were Indian children—whether the information ultimately showed they were or established they were not. Because we do not know what we do not know, nothing more in the way of prejudice need be shown.

Finally, the Department incorrectly contends our recent decisions effectively apply the doctrine of structural error in the guise of the constitutionally required harmless error analysis for violations of state law. (See Cal. Const., art. VI, § 13; *In re Celine R.* (2003) 31 Cal.4th 45, 49-50 [constitutional "miscarriage of justice" standard for assessing prejudicial error applies in dependency matters].) To be sure, we—and a number of other courts of appeal applying a similar analysis of prejudice in Indian status cases—have explained that, when the child protective agency's failure to conduct an adequate inquiry makes it impossible for the parent to show prejudice, we will remand for a proper inquiry. (E.g., *In re J.C.*, *supra*, 77 Cal.App.5th at p. 80; *In re H.V.* (2022) 75 Cal.App.5th 433, 438 & fn. 4; *In re N.G.* (2018) 27 Cal.App.5th 474, 484.) But that is a far cry from holding any misstep by the Department in the process of investigating a child's possible Indian status will require reversal of a no-ICWA finding.[13]

---

[13] The court in *In re Dezi C.*, *supra*, 79 Cal.App.5th at page 785 similarly mischaracterizes our decisions as requiring "automatic" reversal "if any stone is left unturned." Although decisions from other courts have suggested as much (see, e.g., *In re E.V.* (June 30, 2022, G061025) __ Cal.App.5th __, [2022 Cal.App. Lexis 581] [p. 11], we have never said anything of that sort.

21

A simplistic hypothetical—similar to one we discussed in a prior opinion—will illustrate the point:  A child's mother submits an ICWA-020 form indicating she may have Indian ancestry through the maternal grandfather but states she has no additional information.  The child protective agency interviews the maternal grandfather; several, but not all of his four siblings; and the maternal grandfather's surviving parent, none of whom indicates the family has any Indian ancestry.  The failure to interview the grandfather's remaining siblings would certainly be harmless absent some additional unusual circumstance.  The difference between this extreme example and the case at bar (and the facts in *In re Y.W.* and *In re Antonio R.*) is that the hypothetical agency, unlike the Department, made a genuine effort to investigate the child's Indian status by complying in good faith with the mandate of section 224.2, subdivisions (b) and (e).  That is all that is necessary.

Our harmless error analysis thus parallels that adopted by the Supreme Court in *In re Manzy W.* (1997) 14 Cal.4th 1199, which involved a juvenile court's failure to declare a wobbler offense either a misdemeanor or a felony in accordance with section 702.  After holding the duty to express that decision on the record was mandatory—as is the Department's duty under section 224.2, subdivision (b), to ask extended family members about a child's possible Indian status—the Court held a remand was not "automatic," but rather depended on whether the record otherwise reflected the exercise of discretion to declare the offense a felony.  (*In re Manzy W.*, at p. 1209.)  That is, the failure to fully comply with a mandatory duty may be harmless error, so long as the record affirmatively reflects that the protections intended to be afforded through the exercise of that duty have

been provided.  (See *In re G.C.* (2020) 8 Cal.5th 1119, 1131 [remand for failure to comply with section 702 would amount to harmless error "'when remand would be merely redundant'"]; see also *Guardianship of Christian G.* (2011) 195 Cal.App.4th 581, 607-608.)

In sum, further inquiry is required in this case.[14]  On remand the juvenile court must promptly direct the Department

---

[14]    We grant the Department's motion to receive on appeal evidence of minute orders from two hearings held while Natasha's appeal has been pending—the six-month review hearing (§ 366.21, subd. (e)), held on December 14, 2021, and a 12-month review hearing (§ 366.21, subd. (f)), held on June 14, 2022 and continued to July 20, 2022, as well as the status review report prepared for the June 14, 2022 12-month review hearing and a last minute information report filed June 30, 2022.  With respect to ICWA, the status review report states, "On 06/14/2021, the court found that ICWA does not apply to this case.  During this review period, there have been reports of Native American Ancestry."  The June 30, 2022 report corrects this statement to read, "During this review period, there have been no reports of Native American Ancestry.  The mother has not maintained contact with the Department for a majority of this review period, and the current caregivers (the maternal grandparents), have reported no new information as to ICWA."  The Department does not explain, however, that the man referred to as a maternal grandparent appears not to be the maternal grandfather identified by Natasha as the family member through whom there is Cherokee ancestry.  (See fn. 4, above.)

We deny the Department's motion to dismiss the appeal as frivolous.  In that motion the Department notes that neither minute order indicates Natasha raised an ICWA issue at the December 14, 2021 or the June 14, 2022 hearing.  Of more significance, however, is that, notwithstanding the Department's and the juvenile court's "affirmative and continuing duty to

23

to make a meaningful and thorough inquiry regarding Rylei's possible Indian ancestry, including interviews with extended family members and any other persons who may reasonably be expected to have information regarding the child's tribal membership or eligibility for membership and contact with the Cherokee tribe or any other tribes that may have such information. If that information establishes a reason to know an Indian child is involved, notice in accordance with section 224.3 must be provided to any tribe that has been identified or, if the tribe could not be identified, to the Bureau of Indian Affairs. The Department shall thereafter notify the court of its actions and file certified mail return receipts for any ICWA notices that were sent, together with any responses received. The court must determine, on the record, whether the ICWA inquiry and notice requirements have been satisfied and whether Rylei is an Indian child. If the court finds she is an Indian child, it is to vacate its June 14, 2021 disposition order and conduct a new disposition hearing, as well as all further proceedings, in compliance with ICWA and related California law. If not, the court's original disposition order may remain in effect.

---

inquire" whether Rylei may be an Indian child, neither minute order nor the Department's reports indicate the Department, which conceded in its respondent's brief that it failed to comply with its duty of inquiry, made any effort to correct its error, let alone notified the juvenile court that it needed to do so.

24

## DISPOSITION

The June 14, 2021 disposition order is conditionally affirmed. The cause is remanded to the juvenile court for full compliance with the inquiry and notice provisions of ICWA and related California law and for further proceedings not inconsistent with this opinion.


                                    PERLUSS, P. J.

We concur:



SEGAL, J.



FEUER, J.

25