Filed 7/28/22  In re E.M. CA4/2

*See concurring opinion*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.M., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>R.M.,<br><br>        Defendant and Appellant. | E078479<br><br>(Super.Ct.No. RIJ1700333)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Donal B. Donnelly,

Judge.  Conditionally reversed with directions.

Mansi Thakkar, by appointment of the Court of Appeal, for Defendant and Appellant.

Office of County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant and appellant R.M (Father) appeals from the February 3, 2022 orders terminating his parental rights to his son, E.M. (born in May 2021), and placing E.M. for adoption. (Welf. & Inst. Code, § 366.26.)[1] Father claims the orders must be reversed based on prejudicial "initial inquiry" error under the Indian Child Welfare Act (25 U.S.C. § 1901 et. seq.) (ICWA) and related California law (§ 224.2). We agree that prejudicial error is shown; thus, we conditionally reverse the section 366.26 orders. (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 743-746 (*Benjamin M.*).)

The record does not show that the juvenile court or plaintiff and respondent, the San Bernardino County Department of Public Social Services (DPSS), ever asked Father or any paternal relatives whether E.M. had or may have Native American ancestry through Father. Thus, the record does not show that the juvenile court and DPSS discharged their duties to make initial inquiries concerning E.M.'s possible Native American ancestry and possible status as an Indian child through Father. (25 C.F.R. § 23.107(a) (2022); § 224.2.)

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Although Father was a state prison inmate throughout the proceedings for E.M., he was present by telephone at every hearing following the detention hearing. He did not file an ICWA-020 form (parental notification of Indian status), and the record does not show he was ever asked to file one. (Cal. Rules of Court, rule 5.481(a)(2)-(3).) DPSS was in contact with at least one paternal relative and may have had access to others, but the record does not show that DPSS asked any paternal relatives whether E.M. had or may have Native American ancestry through Father. (§ 224.2, subd. (b).)

The error is prejudicial because there was readily obtainable information that was likely to bear meaningfully on the determination of whether E.M. is an Indian child, namely, any knowledge that Father and paternal relatives may have had concerning whether E.M. had any Native American ancestry. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 743-745.) Thus, we conditionally reverse the section 366.26 orders and remand the matter with directions to the juvenile court to comply with, and to ensure that DPSS complies with, the inquiry provisions of ICWA and related California law—and if applicable, the notice provisions of federal and state law as well. (*Benjamin M*., at p. 746.)

## II. BACKGROUND

E.M. was taken into protective custody at a hospital shortly after he was born in May 2021. His mother tested positive for amphetamine upon her admission to the hospital in labor with E.M. The mother reported she had used methamphetamine for years, including with Father, but that she had provisions for E.M.'s support. Father initially denied E.M.'s paternity. Father was in state prison and was expected to be

3

released on parole in August 2022. His expected parole date was later revised to May 2022.

At the detention hearing on May 12, 2021, Father was not present, but he was appointed counsel and DPSS was authorized to conduct paternity testing. The mother signed an ICWA-020 form (parental notification of Indian status), stating that she may be eligible for membership in a federally recognized Indian tribe. On May 18, Father signed a JV-505 form (statement regarding parentage), denying his paternity of E.M. and stating he did not wish to participate in the proceedings. E.M. was in foster care with one of his mother's older children.

Father first appeared in the proceedings by telephone at the initially scheduled jurisdiction and disposition hearing on June 11, 2021. The hearing was continued to July 29, then to August 26, to allow the paternity testing to be completed and to allow DPSS to receive responses to ICWA notices it had sent concerning E.M.'s possible eligibility for tribal membership through his mother. In continuing the hearing to July 29, the court found it was in E.M.'s best interest to establish paternity before proceeding with the case.

On August 26, 2021, Father again appeared by telephone and learned that the paternity test results showed he was E.M.'s biological father. Father asked the court to assess the paternal grandmother (PGM) for placement and to continue the hearing to allow other paternal relatives to be considered and possibly assessed for placement. The PGM lived with a paternal great-grandmother in Homeland. The mother, who had recently tested positive for methamphetamine, objected to placing E.M. with the PGM,

4

saying the PGM was "actively using." The court ordered DPSS to assess the PGM for placement and continued the hearing to September 3.

Father was present by telephone at the jurisdiction and disposition hearing on September 3, 2021. The court found that E.M. was described in subdivisions (b) and (g) of section 300; ordered E.M. removed from parental custody; and denied reunification services to both parents. The court found that DPSS had conducted "a sufficient inquiry" regarding whether E.M. had Native American ancestry, that ICWA did not apply, and that E.M. was not an Indian child.

Also on September 3, 2021, the juvenile court ordered that E.M. not be removed from his current placement (with his older half-sibling) without a court order or exigent circumstances, but the court continued to authorize "all appropriate relative assessments" in the event E.M. had to be removed. On September 24, DPSS filed an ex parte application to assess E.M.'s paternal step-grandmother, S.D., who lived in New Mexico, for E.M.'s potential placement pursuant to the interstate compact on placement of children (ICPC). S.D. contacted DPSS on September 7, said she was willing to accept E.M. for placement and that she, the paternal grandfather, and her adult son had recently moved to New Mexico. The court signed the order, but E.M. was never placed with S.D. The record does not show whether S.D.'s home was ever assessed or whether DPSS asked S.D., other paternal relatives, or others whether E.M. had or may have had any Native American ancestry through Father.

On December 17, 2021, DPSS reported there was "no new information" indicating E.M. had Native American ancestry. Father was present by telephone on

5

January 3, 2022, when the section 366.26 hearing was continued to February 3, as well as on February 3, when the court terminated parental rights and selected adoption as E.M.'s permanent plan.

## III. ANALYSIS

Father claims the February 3, 2022 section 366.26 orders terminating his parental rights and placing E.M. for adoption must be reversed because the juvenile court prejudicially erred in failing to comply with the initial inquiry requirements of ICWA and related California law. We agree.

A. *Applicable Law*

ICWA establishes minimum federal standards that state courts are required to follow before they may lawfully place an Indian child in foster care or terminate parental rights to an Indian child. (25 U.S.C. §§ 1902, 1912(a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 7; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.) An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); *In re H.V.* (2022) 75 Cal.App.5th 433, 467.)

ICWA requires that notice of the state court proceedings be given to Indian tribes "where the court knows or has reason to know that an Indian child is involved . . . ." (25 U.S.C. § 1912(a); *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 8; *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 740-741; *In re T.G.* (2020) 58 Cal.App.5th 275, 287-288.) ICWA's notice requirement, which is also codified in California law (§ 224.3), "enables a

6

tribe to determine whether the child is an Indian child and, if so, whether to intervene" in the state court proceeding or exercise its own jurisdiction in the matter. (*In re Isaiah W.*, *supra*, 1 Cal.5th at p. 5; *In re Y.W.* (2021) 70 Cal.App.5th 542, 551.) The tribe has the right to determine whether the child is eligible for membership and, thus, whether the child is an Indian child. (*In re K.T.* (2022) 76 Cal.App.5th 732, 742.)

Although "ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child," federal regulations implementing ICWA "require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882-883; 25 C.F.R. § 23.107(a) (2022).)

California law imposes a similar duty of inquiry on courts. Under California law, the court is required to ask each participant, whether a parent, guardian, or Indian custodian, at his or her first court appearance in the matter, whether the participant knows or has reason to know that the child is an Indian child. (§ 224.2, subd. (c); Cal. Rules of Court, rule 5.481(a)(2)(A)-(B).) The court is also required to order the participant, at his or her first court appearance, to complete form ICWA-020 (parental notification of Indian status), stating whether the participant knows or has reason to know that the child is or may be an Indian child. (§ 224.2, subd. (c); Cal. Rules of Court, rule 5.481(a)(2)(C).)

In addition, under California law the court and child welfare agency have *initial and continuing duties of inquiry* that are both substantively and procedurally broader than the court's limited duty of inquiry of participants appearing in court under the federal regulations implementing ICWA. (25 C.F.R. § 23.107(a); Welf. & Inst. Code, § 224.2, subds. (a)-(b); see *In re A.C.* (2021) 65 Cal.App.5th 1060, 1068-1069 (*A.C.*).) The court and agency (but not the parents) have, " ' "an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child." ' " (*In re J.S.* (2021) 62 Cal.App.5th 678, 686; see § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a)(4).) "Although commonly referred to as the 'initial duty of inquiry,' it 'begins with the initial contact' (§ 224.2, subd. (a)) and continues throughout the dependency proceedings." (*In re J.C.* (2022) 77 Cal.App.5th 70, 77.)

The duty to inquire "obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290; *In re Q.M.* (2022)___Cal.App.5th___(May 18, 2022, B313171) [2022 Cal.App. Lexis 529 at p. *12]; § 224.2, subd. (a), (b).) The agency's duty of inquiry includes asking "extended family members" whether they know or have reason to know that the child is an Indian child. (§ 224.2, subd. (b).) The agency is also required "on an ongoing basis to include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status . . . ." (Cal. Rules of Court, rule 5.481(a)(5).)

The juvenile court's and the agency's initial duty of inquiry is to be distinguished from the duty of further inquiry, which arises when the court or agency has "reason to

8

believe" that an Indian child is involved but does not have sufficient information to determine that there is reason to know that the child is an Indian child. (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 78; § 224.2, subd. (e).) The initial and further duties of inquiry are also to be distinguished from the duty to give notice under ICWA and California law, which arise when the court or agency have "reason to know" the child is an Indian child. (§ 224.2, subd. (f); *In re H.V.*, *supra*, 75 Cal.App.5th at p. 437 [Section 224.2 " ' "creates three distinct duties regarding ICWA in dependency proceedings." ' "]; *In re Dezi C.* (2022)___Cal.App.5th___(June 14, 2022, B317935) [2022 Cal.App. Lexis 514 at pp. *12-*13 (*Dezi C.*).) The duty of inquiry ensures that a tribe entitled to ICWA notice will receive it. (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290.)

If the juvenile court finds that "proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2); *In re Q.M.*, *supra*,___Cal.App.5th___[2022 Cal.App. Lexis 529, at pp. *14-*15.) When the court finds that ICWA does not apply, the finding implies that the court and agency did not know or have a reason to know that the child was an Indian child and fulfilled their duties of inquiry. (See *In re Austin J.*, *supra*, 47 Cal.App.5th at p. 885.)

B. *The Court and DPSS Failed To Discharge Their Initial Duties of Inquiry*

On September 3, 2021, after DPSS received responses to the ICWA notices it sent concerning E.M.'s possible status as an Indian child through his mother, the court found

that DPSS had conducted "a sufficient inquiry" regarding whether E.M. had Native American ancestry, that ICWA did not apply, and that E.M. was not an Indian child. (§ 224.2, subd. (i)(2).) Substantial evidence does not support these findings to the extent they apply to E.M.'s possible status as an Indian child *through Father*. (See *In re Q.M.*, *supra*,___Cal.App.5th___[2022 Cal.App. Lexis 529, at p. *12].)

As noted, the record does not show that the juvenile court or DPSS ever made any inquiry of Father, of any paternal relatives, or of any others who may have had relevant information concerning whether E.M. had Native American ancestry through Father. (25 C.F.R. § 23.107(a) (2022); § 224.2, subds. (a)-(c).) Father did not file an ICWA-020 form, and the record does not show he was ever asked to complete and file one. (Cal. Rules of Court, rule 5.481(a)(2)-(3).)

In failing to make *any inquiry* concerning E.M.'s possible status as an Indian child through Father, the court violated federal regulations implementing ICWA and state law (25 C.F.R. § 23.107(a) (2022); § 224.2, subds. (a)-(c)), and DPSS violated state law (§ 224.2, subds. (a)-(b)); see *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 741-742 [noting the case involved only an error of state law because the failure to inquire solely concerned the agency's duty of inquiry]). The next question is whether the inquiry errors are prejudicial. As we explain, the inquiry errors are prejudicial under three different standards of reversible error.

C. *The Initial Inquiry Errors Are Prejudicial and Require Conditional Reversal*

The Courts of Appeal are currently applying several divergent standards of reversible error in determining whether inquiry errors under ICWA and California law

are prejudicial and require (conditional) reversal or affirmance. The court in *Dezi C.* recently discerned four separate standards or rules for reversal: the " 'automatic reversal rule,' " the "presumptive affirmance rule," the "readily obtainable information rule," and the "reason to believe rule." (*Dezi C.*, *supra*,___Cal.App.5th___[2022 Cal.App. Lexis 514, at pp. *7-*16].) Reversal is required here under each of these rules, except under the presumptive affirmance rule (see *A.C.*, *supra*, 65 Cal.App.5th at pp. 1068-1069), which we decline to follow for reasons we explain.

1. *Benjamin M.* and the Readily Obtainable Information Rule

The readily obtainable information rule was recently articulated by this court in *Benjamin M.* (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 743-745; *Dezi C.*, at pp. 9-16; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 433-436 (*Antonio R.*); *In re J.C.*, *supra*, 77 Cal.App.5th at pp. 81-82.) Under this rule, inquiry error (whether initial or further) is prejudicial, and reversal is required "where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon [the determination of] whether the child is an Indian child." (*Benjamin M.*, at p. 744.) When, as here, there is a complete failure to inquire regarding at least one parent, and the record contains no information bearing on whether the child is or may be an Indian child through that parent, there is a reasonable probability that, if the inquiries are pursued, they will lead to information bearing meaningfully on the determination of whether the child is an Indian child. (See *Benjamin M.*, at pp. 742-744.)

As *Benjamin M.* explained: "The reason that the federal and state legislative branches have required the ICWA inquiry is that *in any case where information about*

11

*Indian ancestry is unknown, the probability of such ancestry is reasonable enough to require the agency and court to pursue it.*" (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 743, italics added.) Furthermore, ICWA protects Indian tribes (*Benjamin M.*, at p. 743), and an Indian tribe's right to intervene in an appropriate proceeding depends on the state courts' and the agencies' compliance with the inquiry and notice requirements of ICWA and related California law (*Benjamin M.*, at p. 744; *In re A.R.* (2022) 77 Cal.App.5th 197, 204).

Thus, where *no inquiry* has been made, it is reasonably probable that requiring the court and the agency to make the required inquiries will lead to readily obtainable information that is likely to bear meaningfully on the determination of whether the child is an Indian child. (*Benjamin M.*, 70 Cal.App.5th at p. 744-745 ["While we cannot know how Father's brother would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother."].) This is particularly true here, where there were paternal relatives who were identified, their locations were known, and DPSS was in contact with at least one of them; yet, no ICWAS inquiries were made.

2. *Dezi C.* and the Reason to Believe Rule

Reversal is also required under the " 'reason to believe' rule" articulated in *Dezi C.* Under this rule, inquiry error is harmless "unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*Dezi C.*, *supra*,___Cal.App.5th___[2022 Cal.App. Lexis 514, at pp. *9-*10].) The complete failure to inquire concerning at least one parent's Native American

ancestry is reversible under the "reason to believe rule," just as it is reversible under the "readily obtainable information" rule. "A reviewing court" has " 'reason to believe' " further inquiry might lead to a different result, for example, "*if the record indicates that the agency never inquired into one of the two parents' heritage at all* (e.g., *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740) . . . ." (*Dezi C.*, *supra*, ___Cal.App.5th___[2022 Cal.App. Lexis 514, at p. *10], italics added.) That is the case here. Neither the court nor DPSS made any inquiries concerning Father's Native American ancestry.[2]

    3.  <u>The Automatic Reversal and Presumptive Affirmance Rules</u>

Lastly the errors are reversible under the presumptive affirmance rule, the standard Father urges us to follow, which was followed in *Antonio R.* based on the absence of a showing in the record that the department had complied with its duty of inquiry. (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 432; *In re J.N.* (2006) 138 Cal.App.4th 450, 461.) Under the automatic reversal rule, reversal is required "no matter how 'slim' the odds are that further inquiry on remand might lead to a different ICWA finding by the juvenile court. (*Antonio R.*, at p. 435.) The rule at the other end of the continuum presumptively favors affirmance: If the Department's initial inquiry is deficient, that defect will be treated as harmless unless the parent comes forward with a proffer on

---

    [2] Given that reversal is required under *Benjamin M.*, which is grounded on our state's constitutional rule for determining whether error is prejudicial and requires reversal (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 742-744; Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836), we have no occasion to determine whether an additional remedy is required for the court's error of federal law, namely, its failure to ask Father whether E.M. was or may be an Indian child through Father when Father first appeared in the proceeding (25 C.F.R. § 23.107(a) (2022)). That error is also an error of state law (§ 224.2, subd. (c)) and will be remedied by our conditional reversal.

appeal as to why further inquiry would lead to a different ICWA finding (the 'presumptive affirmance rule').'" (*Dezi C.*, *supra*,___Cal.App.5th___[2022 Cal.App. Lexis 514, at pp. *7-*8], citing, e.g., *A.C.*, *supra*, 65 Cal.App.5th at p. 1065 and *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430-1431.)

The errors are reversible under the automatic reversal rule. Under this rule, we generally will not conclude that sufficient evidence supports a court's ICWA finding that ICWA did not apply when the record contains no evidence that the court or DPSS complied with their duties of inquiry. (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 432; *In re N.G.* (2018) 27 Cal.App.5th 474, 484; see *In re A.R.*, *supra*, 77 Cal.App.5th at pp. 205-206 [failure to discharge duty of inquiry requires reversal in "*every* dependency case"]; *In re E.V.* (2022)___Cal.App.5th___(June 30, 2022, G061025) [2022 Cal.App.Lexis 581, *8-*16 [accord].) That is the case here. The record is completely devoid of any evidence that the court or DPSS discharged their duties of initial inquiry under federal and state law.

DPSS claims the inquiry errors were harmless because, at the time of the September 3, 2021 hearing, the court found that ICWA did not apply and that there was "no new information indicating there was any Native American ancestry." DPSS claims the errors were harmless under *A.C.*, *supra*, 65 Cal.App.5th at p. 1068, which applied the presumptive affirmance rule, and *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745, which applied the readily obtainable information rule (*Dezi C.*, *supra*,___Cal.App.5th___[2022 Cal.App. Lexis 514, at pp. *9-*16]).

14

First, the errors are prejudicial under *Benjamin M.*, for the reasons explained. We decline to follow *A.C.*, or the presumptive affirmance rule, for the reasons explained in *Benjamin M.* and *Dezi C.* (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745; *Dezi C.*, *supra*,___Cal.App.5th___[2022 Cal.App. Lexis 514, at pp. *22-*24].) Among other things, the presumptive affirmance rule, "by focusing on what a parent proffers on appeal, . . . ignores that the juvenile court record may provide a reason to believe that the juvenile court's ICWA finding is incorrect and that further inquiry is warranted." (*Dezi C.*, at pp. *22-*23.)[3] "Furthermore, it is in part the tribe's right to a determination of a child's Indian ancestry, but the tribe is not present, and the agency is charged with obtaining information to make that right meaningful." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745.) That right was not made meaningful in this case.

---

[3] DPSS further argues the errors were harmless because Father stipulated, through his counsel at the post permanency hearing on January 3, 2022, that ICWA did not apply. DPSS cites no authority for the proposition, nor are we aware of any, that Father's stipulation vitiates the initial inquiry duties of the court or DPSS, or that Father's stipulation is binding on any Indian tribes who may entitled to notice of these proceedings.

## IV.  DISPOSITION

The section 366.26 orders for E.M. are conditionally reversed.  The matter is remanded to the juvenile court with directions to comply with the inquiry provisions (and, if applicable, the notice provisions) of ICWA and related California law.  If, after completing the initial inquiry, neither DPSS nor the juvenile court has reason to believe or to know that E.M. is an Indian child, the section 366.26 orders shall be reinstated.  If, on the other hand, the juvenile court or DPSS obtains reason to believe or to know that E.M. is an Indian child, the court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

I concur:


SLOUGH
J.

16

[*In re E.M.; DPSS v. R.M.*, E078479]

Ramirez, P. J., Concurring.

I concur completely in the court's opinion. However, because the court declines to follow *In re A.C.* (2021) 65 Cal.App.5th 1060 (*A.C.*) — and because I was the author of *A.C.* — I feel the need to defend myself against any charge of inconsistency.

In 2006, *In re Rebecca R.* (2006) 143 Cal.App.4th 1426 [Fourth Dist., Div. Two] (*Rebecca R.*) held that an agency's asserted failure to carry out its duty to inquire was harmless where the parent did not "make an affirmative representation of Indian heritage" on appeal. (*Id*. at pp. 1430-1431.)

When we decided *A.C.*, *Rebecca R.* was stare decisis in our division. What's more, three of our sister courts had followed it. (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388 [First Dist., Div. One]; *In re H.B.* (2008) 161 Cal.App.4th 115, 121 [Second Dist., Div. Seven]; *In re N.E.* (2008) 160 Cal.App.4th 766, 769-771 [Fourth Dist., Div. Three].) Only one case had come to a different conclusion, but it was decided before *Rebecca R.,* and it resolved the issue in a footnote, with almost no analysis. (*In re J.N.* (2006) 138 Cal.App.4th 450, 461 & 461, fn. 10 [Fifth Dist.].) Rules of precedent familiar to any first-year law student counselled that we follow *Rebecca R.*

Since then, however, it is as if *A.C.* declared, "Let a thousand flowers bloom." As the lead opinion ably recounts, the near-unanimity that prevailed before *A.C.* has shattered into a welter of conflicting standards. In this division alone, *In re Benjamin M.* (2021) 70 Cal.App.5th 735 [Fourth Dist., Div. Two] disagreed with *A.C.* and thus,

1

implicitly, with *Rebecca R.*  As a result, only a year after *A.C.* was decided, it is no longer stare decisis, and it is no longer supported by stare decisis.

There is a reason for this breakdown of consensus:  The issue of when, if ever, an agency's failure to inquire can be deemed harmless pits the interests of parents and of Indian tribes squarely against the interests of abused and neglected children (in permanency) and the interests of the judicial system itself (in efficiency and finality).  As a matter of both law and policy, it is not clear where to draw the line between them.

Wisely, the lead opinion does not attempt to pick and choose any single one of the conflicting standards.  At this point, I suspect that that task will be up to our Supreme Court.  It decides the minimum necessary to resolve the appeal, namely not to follow *A.C.*  I join in that decision, because *A.C.* has had its chance to persuade and has not done so (although it may have one last chance if and when the Supreme Court reaches the issue).

RAMIREZ
P. J.